## David C. Hutchinson v. William Tindall.

A court of equity will hear a party who seeks relief against his own act on the ground of intoxication, though formerly such hearing was denied.

To avoid a contract on the ground of intoxication it must be shown, either that the intoxication was produced by the act or connivance of the person against whom the relief is sought, or that an undue advantage was taken of the party's situation.

If a person while in a state of intoxication, though not induced by the act or procurement of the grantee, execute an absolute conveyance of his property without consideration, equity will relieve against the conveyance.

But if a person while intoxicated voluntarily execute a deed of trust for the benefit of his wife and children, equity will not set it aside on the ground that undue advantage was taken of his situation.

A resulting trust may be established by parol.

But a trust coming within the provisions of the statute of frauds, can never be established by parol, especially where there is no mistake or omission alleged in preparing the instrument.

A declaration of trust requires no formality, so that it be in writing and have sufficient certainty to be ascertained and executed; and it is not material whether the writing be made as evidence of the trust or not.

Where a deed is made absolute on the face of it, and without any actual consideration paid, if the grantor seeks to set it aside on the ground of fraud, the answer of the defendant setting up a trust, unless directly responsive to the bill, will not be evidence of the trust.

But where the grantor files his bill claiming the deed to be a deed of trust, and the defendant by his answer admits it, the answer, *it seems*, will be good evidence of the trust, and a sufficient *writing* to support it.

*Wilson* and *Southard*, for complainant.

*H. W. Green*, for defendant.

Cases cited for complainant. 3 *P. W.* 131; 1 *Vesey*, 19; 18 *Vesey*, 15; 4 *Dess.* 364; 1 *Wash.* 164; 1 *Hen. and Mun.* 70; *Powell on Cont.* 67, 69; 1 *Comyn on Con.* 3; 1 *Fonb. Eq.* 40; *Rev. Laws*, 152; 3 *Stark. Ev.* 995, 1002; 7 *Vesey*, 219; 1 *P. W.* 618; 3 *Atkyns*, 388; 1 *Ves. and B.* 378; 1 *John. Chan. R.* 281, 428; 2 *Atkyns*, 384; 1 *Atkyns*, 447;

[Hutchinson v. Tindall.]

3 *Atkyns,* 8; 1 *Ves. and B.* 524; 1 *Dess.* 337; 2 *Penn.* 1003;
3 *Hals.* 71.

Cases cited for defendant. 1 *Vesey,* 19; 18 *Vesey,* 12; 1 *Eq.
Cas. Ab.* 88; 1 *Green,* 242; 4 *Wash. C. C. R.* 268; 2 *Kent's
Com.* 451; 13 *Vesey,* 88; 3 *Bro. C.* 443; 4 *Kent's Com.* 455;
1 *John. Chan. R.* 251; 3 *Stark. Ev.* 1018–19; 2 *Atkyns,* 203;
1 *Fonb. Eq.* 200, (o); 2 *P. W.* 151.

THE CHANCELLOR. The complainant seeks the decree of
this court to set aside, as fraudulent and void, a deed from him-
self and wife to the defendant, for a farm of about one hundred
and seven acres, in the county of Burlington. He alleges, that
while in a state of great intoxication, at the dwelling-house of
the defendant, where he was invited to drink and did drink spi-
ritous liquor, he was requested by the defendant to sign a paper
which was presented to him, and that he undertook to sign his
name to it, but believes he did not sign it. A few days after, he
was informed by Nathaniel Dunn that he had signed the paper,
and that it was a deed conveying to _him_ his farm in fee simple.
He has no recollection of having signed such instrument, and
must have been wholly or partially deprived of his understand-
ing at the time. That the deed is wholly without a good or val-
uable consideration. The prayer of the bill is, that the deed and
the record of it may be cancelled, or that the defendant may be
compelled to pay to the complainant the full value of the farm.

The defendant says, in answer, that Hutchinson and wife
made and executed the deed, for the consideration of two thou-
sand dollars, expressed in the instrument; that it was acknow-
ledged, on the day of its date, before Andrew Rowan, esquire,
by the grantors, and afterwards recorded. That the property was
acquired with the money of Hutchinson's wife, who was the sis-
ter of defendant; and Hutchinson having become habitually in-
temperate, he was induced, at the solicitation of his sister, to
consent to become a trustee for herself and children, in case the
complainant and his wife should choose voluntarily to convey

any part of the property to him for that purpose. That on the day the deed bears date, the complainant and his wife came to defendant's house, and there voluntarily proposed to convey to defendant the premises in fee simple for the benefit of the wife and children of the complainant, and desired a deed to be prepared for that purpose. That defendant prepared the deed, and read it over carefully to both Hutchinson and his wife, and then delivered it to Hutchinson, who with his wife went immediately to Andrew Rowan's to have it acknowledged. They afterwards returned and delivered the deed, executed and acknowledged, to the defendant. He expressly denies that Hutchinson was intoxicated or in any way deprived of his reason or understanding; and alleges that he was not under the influence of intoxication, and was fully competent to dispose of his property, and that the deed was executed voluntarily, and with a full knowledge and understanding of its contents. He also expressly denies giving to complainant any spiritous or other intoxicating liquor until after he had prepared the deed and read it to complainant, nor, as he believes, until the complainant and his wife returned from esquire Rowan's; when, observing that the complainant was trembling for the want of his ordinary stimulus, he gave him some with the consent of his wife, believing it would be of service; and so far as the defendant knows, the complainant drank no other spiritous liquor that day.

The defendant further admits, that he paid no part of the consideration money; and alleges that he holds the property for the use and benefit of the wife and children of the complainant; and that he has, with his own funds, paid off a mortgage on the premises of four hundred and fifty-three dollars and thirty-three cents, and caused it to be delivered up to be cancelled.

He does not object to a decree securing more satisfactorily to the wife and children of complainant their interests under the deed, nor to another trustee.

Much testimony has been taken on both sides to show the real situation of Hutchinson at and about the time the deed was executed. It appears that he was an intemperate man, sometimes

drinking to excess, and carrying his intemperance so far as to occasion at times something like temporary derangement. He had a wife and five children, and owned a farm, which, with the improvements on it, was worth upwards of two thousand dollars; and that he had received of his wife more than that amount of property, with which he was enabled to settle himself comfortably in the world. He had been much in liquor about the time the deed was given, and some of the witnesses state that on the morning of that day they saw him stagger as he walked. He got into his brother's house by holding on to the door posts, and could not get into his wagon without assistance. The witnesses differ in regard to his capacity for business at the time he made the deed, as is usual in cases of this kind. My own conclusion from the whole of the evidence is, that he was not so far intoxicated as to be rendered incapable of transacting every kind of business, but that he was, nevertheless, considerably under the influence and excitement of ardent spirits, and not competent to attend to his concerns with prudence and judgment. He was, at least, partially intoxicated, and to such a degree that the court must apply to this case the principles that apply to similar cases when a party comes to have a contract set aside on the ground of intoxication.

These principles have frequently been discussed in this court, and appear to be settled. From all the cases it may be laid down,

1. That the court will hear any person who seeks relief on this ground. Formerly such hearing was denied. The party setting up such defence could not be heard: *Johnson* v. *Medlicott*, cited 3 *P. W.* 130.

2. That the fact of intoxication is not of itself sufficient to avoid a contract: *Cory* v. *Cory*, 1 *Ves. sen.* 19.

3. That to avoid the contract, it must be shown, either that the intoxication was produced by the act or connivance of the person against whom the relief is sought, or that an undue advantage was taken of the party's situation: *Cooke* v. *Clayworth*, 18 *Ves.* 12; *Adm'rs of Wilmurt* v. *Morgan*, Opin. of Ch. *Williamson*,

[Hutchinson v. Tindall.]

*Mar.* 1827; *Crane* v. *Conklin, Saxton,* 346; *Pettinger* v. *Pettinger.** 

Considering these principles as settled, we are to inquire, in the first place, whether the intoxication of the party was procured in any way by the defendant. Upon this part of the case there is no doubt. The allegation, though made very directly in the bill, is shown to be wholly incorrect. No liquor was furnished by the defendant, or any of the family, until in the afternoon, after the whole business was completed. Then a little was given, with the consent of Mrs. Hutchinson. Not only so, but there is no evidence that he tasted any thing at esquire Rowan's, or in going or returning thence. If, then, he was intoxicated, it was not through the agency of the defendant.

We are next to inquire whether any undue advantage was taken of his situation. Was the contract an unconscionable one? Was the act unreasonable or improper?

If this is to be considered an absolute conveyance—as it appears to be on the face of it—there having been no consideration paid, it would appear to be unreasonable. No one can presume that Hutchinson intended to give away all his farm; and if such pretension were set up by the defendant, I think the court would relieve against it.

If it is to be considered a deed of trust, as alleged by the defendant, then the case is essentially altered, for there is a good consideration to support the instrument. We find from the evidence, that such a step had been contemplated. The complainant had been advised that very morning by Dunn, one of his own witnesses, to give a deed of trust or power of attorney to one of his brothers; and he said he could not do that, but he wanted somebody to act for him. This same witness tells us three different times in the course of his examination, that Hutchinson believed it was a deed of trust he was signing. Taking this to be the fact, I cannot undertake to say that such conveyance was unreasonable or improper. The property was purchased with the money of the wife. She had borne to him five

* Ante, page 156.

46

[Hutchinson v. Tindall.]

children, who were to be taken care of and provided for. He was an intemperate man. He appeared to be sensible of his inability to manage his own concerns, at all times, in a proper way. If, under these circumstances, he thought proper to place this part of his property in the hands of a friend for the benefit of his wife and children, a court of equity will hardly interfere to set it aside, on the plea of an improper advantage being taken of the party's situation.

The question then arises, How is this deed to be made a deed of trust? It is absolute on the face of it; how then can it be altered in its terms by parol proof?

If this were a resulting trust, the case would be clear of this difficulty; for such a trust may be established by parol. But it is a trust of a different character, coming within the provisions of the statute of frauds. Such a trust can never be established by parol, especially where there is no mistake or omission alleged in preparing the instrument. In some instances of that description, such proof has been received; and many judges are of opinion that the security intended to be guaranteed by the statute has been thereby already greatly diminished.

It is sought, in this case, to establish and define the trust, by the answer of the defendant. In that, as has been seen, he states what he alleges to be the true consideration of the conveyance; and proffers his willingness to execute a declaration of trust, or secure the interest of the wife and children in any way the court may direct. Can this answer of the defendant be recognized as competent and sufficient evidence to establish the trust? A declaration of trust requires no formality, so that it be in writing, and have sufficient certainty to be ascertained and executed. It may be in a letter, or upon a memorandum; and it is not material whether the writing be made as evidence of the trust or not. The recital in a deed has been held to be a sufficient disclosure: Bellamy v. Burrow, Ca. Tem. Talb. 97; Deg v. Deg, 2 P. W. 412; Kirk v. Webb, Prec. Ch. 84; Jeremy's Eq. 22.

It has been held in the English courts, that an answer to a

[Hutchinson v. Tindall.]

bill may be a good declaration of trust. I am inclined to believe that if the present complainant had filed a bill claiming this deed to be a deed of trust, and praying that it might be so decreed, according to the original intention of the parties, that the answer of the defendant, admitting the trust, would have been good evidence of it. It would have amounted to a sufficient declaration of the trust. But it would seem to be different when a complainant seeks, on the ground of fraud, to set aside a deed absolute on the face of it, and confessedly without any actual consideration paid; for, as was well observed by the complainant's counsel, to suffer a defendant in such case to come in and avoid the claim, by setting up a trust, would be to permit him to create a trust according to his own views, and thereby prevent the consequences of a fraud. And yet respectable authorities appear to consider that it may be done. In *Hampton* v. *Spencer & e contra.*, 2 *Vern.* 288, the case was this. The complainant, Hampton, in consideration of eighty pounds paid by the defendant, Spencer, conveys a house and surrenders a copyhold estate to the defendant and his heirs. The bill was for a reconveyance on payment of the remainder due of the eighty pounds and interest. The defendant, by answer, insisted that the conveyance was absolute to him and his heirs, without any proviso, clause or agreement that the complainant might redeem; but confessed it was in trust, that after the eighty pounds, with interest, was paid, defendant should stand seized for the benefit of the complainant's wife and children, although no such trust was declared in writing. For the complainant it was insisted, (as was done in this case,) that he having replied to the defendant's answer, who had not made any proof of such pretended trust, he was bound by his confession that he was not to have the estate absolutely to himself, and no regard ought to be had to the matter set forth in avoidance of the complainant's demand, because the defendant had not proved it; yet the court decreed the trust for the benefit of the wife and children. This is certainly a strong decision in favor of the defendant. The only difference in the two cases is, that in the one case the complainant sought to redeem, and in

the other he seeks to set aside the original conveyance; and I do not see that this difference varies the principle. The trust is not charged in the bill in either case.

The general rule in relation to answers, how far they shall be considered as evidence, is, that when a party's answer is responsive to the bill, it shall be evidence; but when he undertakes to set up new, distinct and affirmative matter, not fairly responsive to the bill, such matter must be proved. What shall be considered responsive to the bill, is often a subject of controversy. Here the party is required by the bill to disclose what was the consideration of the deed. In answer, he states what consideration appears on the face of the deed, to wit, the sum of two thousand dollars. He is also required to disclose whether he has paid the consideration, or secured it to be paid. To this he answers, that he paid no part of the consideration money expressed in the deed, and that there was none to be paid according to the original understanding between the parties to the said deed of conveyance; and that he holds the said premises, not for his own use or benefit, but for the use and benefit of the family of the said Hutchinson.

I incline to the opinion that this must be considered matter in avoidance, and not properly responsive to the bill. There is no trust charged, or any thing in the nature of a trust. When the complainant inquired what was the consideration of the deed, and whether any part of it was paid or secured to be paid, he intended a money consideration. He had no reference to any use, declaration of trust, covenant, or understanding between the parties. It was simply as to the money paid or secured to be paid. He had a right to make inquiry as to that and omit every thing connected with it. The authorities on this subject are not entirely uniform, arising chiefly from the difficulty of applying the rule to the particular case. In *Gilb. L. E.* 45, there is a leading case decided by lord chancellor Cowper. It was a bill by creditors against an executor for an account. The executor stated in his answer, that the testator left eleven hundred pounds in his hands, and that afterwards, on a settlement with the testator,

he gave his bond for one thousand pounds, and the other hundred pounds was given him by the testator as a gift for his care and trouble. There was no other evidence of the eleven hundred pounds having been deposited with the executor. A replication was filed; and it was ruled, that what was confessed and admitted by the answer was good against the defendant, but that he must establish by proof what was inserted by way of avoidance; or in other words, he must be charged with the whole sum unless he could prove the gift as he had stated it. In *Thompson* v. *Lamb*, 7 *Ves.* 587, lord Eldon said he was clearly of opinion, a person charged by his answer, cannot by his answer discharge himself. And the same rule was admitted in *Boardman* v. *Jackson*, 2 *Ball and Beat.* 382. In *Beckwith* v. *Butler*, 1 *Wash. Rep.* 224, the court say, the answer of a defendant in chancery is not evidence where it asserts a right affirmatively, in opposition to the plaintiff's demand. In such a case he is as much bound to establish it by different testimony, as the plaintiff is to sustain his bill. It would be monstrous indeed if an executor, when called upon to account, were permitted to swear himself into a title of part of the testator's estate. See also *Paynes* v. *Coles*, 1 *Munf. R.* 373; *Bush* v. *Livingston and al.*, 2 *Caine's Ca. in Er.* 66. In *Green* v. *Hart*, 1 *John. Rep.* 580, the doctrine was carried out to its fullest extent by the court of errors in New-York. Hart charged in his bill, that he paid a full and valuable consideration for the note endorsed to him by Green; and Green, in his answer to this charge, and to the interrogatory founded on it, alleged that part of the consideration was usurious. Chancellor Lansing held, that this allegation was merely in avoidance, and was not sufficient without other proof. The decree was affirmed by the unanimous opinion of the court of errors. Mr. justice Spencer, in delivering the judgment of the court, said, " I view the appellant's answer, charging usury, as insisting on a distinct fact by way of avoidance. The respondents having replied, and given him an opportunity to prove the fact, and he having failed to do so, his answer is no evidence of the fact. This is a well established

principle in chancery proceedings, and will be found recognized in every treatise on evidence in that court." In *Hart* v. *Ten Eyck*, 2 *John. Chan. R.* 62, chancellor Kent recognized these authorities, and approved the rule as perfectly just; saying, that a contrary doctrine would be pernicious, and render it absolutely dangerous to employ the jurisdiction of this court; inasmuch as it would enable the defendant to defeat the plaintiff's just demand by the testimony of his own oath, setting up a discharge or matter in avoidance. That was the case of an account, and the question was, whether the charges for disbursements should be allowed upon the strength of the answer. It was adjudged that they could not. This decree was afterwards reversed in the court of errors, and upon this very point; but as there is no report of the case, (other than a mere note in 1 *Cow. R.* 744,) and the precise view of it cannot be ascertained, I am not disposed to consider it as overturning a whole series of decisions, such as have been referred to. Out of this last adjudication has grown the later one (in the same court) of *Woodcock* v. *Bennet,* 1 *Cowen,* 711, where a pretty broad and general answer was considered as responsive to the bill; but on examination I think this last case proves nothing to the point, for the answer is not more broad and spreading than the interrogatory.

It is to be remarked, that in all the authorities referred to, the matter set up in avoidance was one of personal benefit to the defendant. It was an attempt to make evidence for himself. In that particular, this case is different ; for the party seeks no benefit growing out of the trust. I am not prepared to say that this difference will alter the principle. If the facts alleged are not responsive to the bill, they are of no avail. It is the peculiar privilege of the complainant in this court, to say how far, and to what particular points of the case, he will probe the conscience of the defendant, and thereby make him a witness. Advantage may be taken, at times, of this privilege, so as to hinder justice; but the evil is small compared with what would result from considering the whole of the defendant's answer as evidence, whether strictly responsive to the bill or not.

[Hutchinson v. Tindall.]

Independently of the answer, the allegations respecting the trust are not proved. The strongest evidence is that of Dunn; who states it as his belief, that Hutchinson, when he executed the deed, thought it was a deed of trust. This might, with some of the other circumstances in the case, be sufficient to establish a trust of some kind; but it leaves us entirely ignorant of the nature of the trust intended; and if a trust be of so vague a character that a court cannot tell how to construe or to execute it, it is as none. There is some other evidence, but in my view very inconclusive. The facts, that Hutchinson spoke of this deed afterwards in the presence of one of the witnesses; that he was present when the agreement for a lease was made between Tindall and Hughes, and when Tindall paid off the mortgage to Cubberly, do not either separately or in the aggregate, prove the fact of a trust, or the terms of it.

From this view of the law and the evidence, there is no trust made out in this case—unless allegations of trust contained in an answer are exceptions to the general rule. The decision in *Vernon* would seem to favor this idea; but I cannot find, after a diligent search, that it has ever been followed. And not being satisfied with its correctness, I feel unwilling to make it the foundation of a judicial decision. The result then is,

1. That Hutchinson was, by reason of his situation, entitled to the protection of the court, so far as to authorize an inquiry whether the intoxication was procured, or whether any advantage was taken of his situation.

2. That the deed being executed while in this state, for an alleged consideration on the face of it of two thousand dollars, which it is admitted is not to be paid and was not intended to be; and the trust asserted by the defendant in his answer not being proved, it cannot be sustained for the purposes of that trust; and no other purpose or trust being set up, or pretended, the deed is without consideration, and void as against the grantor.

I am of opinion, therefore, that the deed ought to be delivered up to be cancelled, and that the property be reconveyed by Tindall to Hutchinson; and as I have no reason to believe that any

[Hutchinson v. Tindall.]

actual fraud was intended, I think it right that Tindall should be allowed the amount he paid to discharge the Cubberly mortgage, together with interest on it, and that the cancellation and reconveyance be upon that condition.

I have considered this case under the conviction that the situation of Hutchinson was such, at the time of the transaction, as to entitle him to the protection of the court. In this matter of fact I may possibly be mistaken; although, I am free to declare, that after anxiously reviewing the whole testimony, I see no reason to doubt the conclusion. If, however, I should be in error, it would not materially alter the rights of the parties: for if the trust, as set up by the answer, cannot be sustained, no benefit can accrue under or out of it to those who informally claim as cestui que trusts, and for whose interest alone the court has been asked to sustain this deed. No other trust or purpose is pretended; and, of course, none other can be established. The deed being, then, without consideration, could not enure to the benefit of the grantee. It would be decreed for the benefit of the grantor, as a resulting trust. And, although it could not be so decreed with the present pleadings, the complainant might be permitted to file a supplemental bill, and have the benefit of such decree.

Costs are not allowed on either side, as against the other.

Decree accordingly.

