## Isaac Crane and others v. William D. Conklin, Calvin Freeman and Johnson Ward.

An ejectment bill, technically so termed, is one brought simply for the reco-very of real property, together with an account of rents and profits, without setting out any distinct and substantive ground of equity juris-diction, which would be demurrable where there is no proper ground of equity.

But a bill to set aside a fraudulent conveyance, filed by those who without the incumbrance of such conveyance are undoubtedly entitled, is altogether different from an ejectment bill, and comes within the ordinary powers of this court.

The bill in this case, filed by the heirs at law, to set aside a conveyance frau-dulently and unconscientiously obtained; without any, or if any, a totally inadequate consideration; from a person who from habitual intoxication and being almost incessantly under the influence of liquor, or from debility of body and mind arising from a long fit of intoxication from which he was then just recovering, was incapable of transacting business with discretion, and while he was legally incompetent to make any disposition of his pro-perty; was held good, on demurrer.

In this case, an ejectment might have been brought. The title of the heirs is strictly a legal title, and might have been asserted in a court of law. But it does not follow, that because a party may resort to an action of eject-ment, he has no remedy in this court. The principle is too broad, and the practice of the court against it. There are many cases in which the juris-diction of courts of law and equity are concurrent, and the party is at lib-erty to seek relief in either.

It is a well settled principle, that relief is to be obtained in this court, not only against writings, deeds, and the most solemn assurances; but against judgments and decrees, if obtained by fraud and imposition.

If there has been the suppression of a truth, or the suggestion of a falsehood, whereby a party is circumvented or deceived, equity will relieve against it.

Where undue advantage has been taken of the weakness or necessity of the party; or of any situation in which he is placed, rendering him peculiarly

liable to imposition ; this court will interfere.  It proceeds on the safe prin-
ciple, of protecting those who are not able to protect themselves.

It has become the settled rule of this court, that it will not interfere to assist
a person on the ground of intoxication merely ; but if any unfair advantage
has been taken of his situation, it will render all proper aid.

Inadequacy of price can never be the ground of setting aside a deed, unless
accompanied with fraud or misrepresentation ; but this is only where the
party is able to contract.  Where the party was intoxicated, inadequacy
of price is direct evidence of fraud.

The fact of the price not being paid, is no ground to set aside a deed.  The
fraud must be in the original transaction, and not in the non-fulfilment of
the contract.  But though it does not change the nature of the transaction,
it may, if proved, be strong testimony to show its real character.

THE case made in the bill is shortly this : That William M.
Crane, late of the county of Essex, being seized and possessed
of a considerable real and personal estate, in said county, amount-
ing to the sum of four thousand dollars or upwards, died in April,
1829, aged fifty-five years.  That during the months of January
and February of the year preceding his death, he was almost
incessantly under the influence of liquor, so as to be incapable of
managing his business with discretion ; and that, when for a few
days he refrained from drink, the debility of his body and mind
was so  great as to render him incompetent to the rational trans-
action of his concerns.  That on the 1st of February, 1828, when
he was in a situation legally incompetent to make any disposition
of his property, the defendant William P. Conklin, who was a
brother of the wife of Crane, and the defendant Calvin Free-
man, also a relative of hers, availing themselves of the situation
of Crane at the time, fraudulently and most unconscientiously,
and without any, or if any, a totally inadequate consideration,
procured from him a deed in fee simple for all his real estate.
The deed purports to be made for divers good considerations, and
for the sum of five dollars, money of the Untied States.  That
in order to give colour to these fraudulent designs, they executed
at the same time to the said Crane and his wife, a certain in-
strument or agreement, whereby they covenanted, in considera-
tion of the conveyance aforesaid, to pay off and discharge all
Crane's debts, and to allow to him and his wife during their joint
lives, and the life of the survivor, the weekly sum of one dollar

July, 1831.

Crane et al.
v.
Conklin et al.

and seventy-five cents, to be paid to the wife of Crane during her life-time, for their use; and if she should first die, then to his use during his life. They were also, by the agreement, to have the use of one room, and a privilege in the garret, cellar, and garden.

The bill then charges, that Crane owed no debts; that the fourteen shillings per week was not paid, or if it was, was paid in liquor of the most pernicious quality. That his wife having died soon after the execution of the deed, he was left in a state of suffering and want, many days going without food, or sustaining himself by the crumbs of charity. That the defendants, Conklin and Freeman, took possession of the property, rented out the house and lands, and took the rents and issues to their own use; and afterwards sold four or five acres of it to Johnson Ward, the other defendant, who purchased with notice of the fraud, and took for his protection a warranty deed.

The complainants, who are the heirs at law of Crane, pray that, under these circumstances, the deed from Crane and wife to Conklin and Freeman, and also the deed from them to Ward, may be deemed to be fraudulent or unduly obtained, and therefore void as against them; that the same may be set aside and given up to be cancelled; and that the defendants may be compelled to re-convey or release the lands to the complainants: *or* that the same may be sold under the direction of the court, and, after allowing to the defendants what may be justly due them, if any thing, that the residue be distributed among the complainants according to their respective rights.

To this bill the defendants have demurred, on the ground that it is simply what is known by the name of an ejectment bill; that the complainants have not shown the existence of any impediment in the way of a proceeding at law, for establishing their title and recovering possession; that the remedy is at law; and that, not having shown any right to relief in this court, they are not entitled to a discovery.

*J. P. Jackson,* for the demurrants. The bill in this case is, substantially, for the recovery of land; to which the complainants claim title, as heirs of William Crane, deceased. It is what

is properly termed an *ejectment bill*; and may be demurred to on that ground. The title of the heirs is a legal title, which may and ought to be tried in a court of law: 1 *Mad. Ch.* 72, (2d Ed. *Hartford*, 201); 3 *Meriv. R.* 172. This court has no jurisdiction to try the title to lands. It cannot determine the validity of a will, either of real or personal estate: 3 *Meriv. R.* 161. There is no one fact or circumstance stated in the bill, that can bring this case within any exception to the general rule. The bill does not state any suit at law, brought or intended to be brought; or pray the aid of the court to enable the complainants to assert their legal title. An heir at law, out of possession, is entitled to a discovery of deeds necessary to support his legal title, or to have *terms* put out of the way which would impede his recovery at law: 3 *Mad. R.* 99. But this bill does not seek for title deeds, nor state any impediment to a trial at law, or that any discovery is necessary. If it had charged, that the defendants had got the title deeds, and mixed the boundaries; and prayed for discovery, possession, and an account; it would, still, have been liable to a demurrer: 3 *Ves. jr.* 3. The plaintiff cannot come here for the possession of the title deeds, until after he has recovered the estate at law: 3 *Mad. R.* 182; *Ch. Williamson's Opin., Vreeland et al.* v. *Demarest et al.* (in this court.)

The bill charges the receipt of rents and profits, and prays general relief; yet the heir cannot file a bill for an account, unless he states an impediment to his recovery at law: 1 *Mad. C.* 189. On a bill for tithes it is not the practice to make decrees, except to assist trials at law: 1 *Mad. C.* 108.

An heir at law has no equity except to remove incumbrances standing in the way of his legal title: 4 *Ves. jr.* 67. A bill by an heir at law out of possession, praying an issue, and stating no impediment to the assertion of his right at law, would be an *ejectment bill*, and not sustainable in this court: 1 *Mad. R.* 110. In the present case, the complainants seek to establish their own title, as heirs at law, and to defeat that of the defendants, by a decree of this court, without stating any impediment to a recovery at law.

Intoxication, or imbecility arising from it, are alleged in the

bill; but it is not stated that this was brought about by the defendants. Without this, deeds obtained from a man in that situation will not, in general, be relieved against: 1 *Mad. C.* 301; 3 *P. Wms.* 130, *n. A.*; 1 *Fonb.* 59, 60; 1 *Ves. sen.* 19.

Mere inadequacy of price is not sufficient to avoid a deed: 2 *John. C. R.* 1; 14 *John. R.* 527: if it was, it is not sufficiently manifest in this case. A voluntary conveyance, or conveyance in fraud of law, is not a nullity, but binds parties and privies: 3 *Mason,* 378; *Jeremy,* 414; 2 *Hals. R.* 173.

Lastly, it is said, the consideration was not paid; but to avoid a deed or other contract on the ground of fraud, the fraud must be in the *original transaction,* and not subsequent fraud: 5 *John. C. R.* 29, 30.

We insist, that the complainants' bill contains no ground of equity, to entitle them to the aid of this court.

*T. Frelinghuysen,* contra. We contend, that this bill is sustained by sound principles of equity. It presents the gross case, of relations availing themselves of the situation of the grantor, either when he was under the direct influence of liquor, or when his mind was greatly enfeebled by a recent fit of intoxication; and obtaining a conveyance of all his real estate, on an insufficient consideration, (which was never paid,) in fraud of himself and his lawful heirs. It seeks to set aside the original conveyance to *Conklin* and *Freeman,* and the deed by them to *Ward;* and that they release; and if they have advanced any thing to William Crane, that they may come to an account, and receive payment of what may be due to them out of the lands.

1. In support of this bill, a familiar principle of equity at once suggests itself—that it affords a more certain, full and complete remedy and relief, than any proceeding at law; and this alone will give jurisdiction to the court: *Mitf.* 103, 107. If the complainants have title, in justice, (and the demurrer admits this,) then here are two outstanding adverse deeds, that we have a right, in equity, to put out of the way, that they shall not hang as a cloud over our title. And this relief may be given, while full justice is awarded to the defendants, for any monies advanced by, and fairly due to them.

2. Fraud *in the transaction*, is the basis of our equity ; that the defendants *took advantage of* William Crane's *situation*, and thereby defrauded him of his property. The subsequent *non-fulfilment* of the agreement, is not charged as the ground of our bill ; but only as confirmatory of the original design of the defendants, and to complete the history of their misconduct in the matter. The charge of fraud, whether against a deed, or any other contract, agreement or assurance, or against a judgment, decree, or the probate of a will, will sustain the jurisdiction of a court of equity to question it, and relieve against it : 1 *John. C. R.* 402, *Reigal* v. *Wood ;* 1 *Ves. sen.* 120, 284, 289.

July, 1831.

Crane et al.
v.
Conklin et al.

3. This court is not called on to *try the title* to the lands in question, in such a sense as that the defendants can raise an available demurrer to its jurisdiction. We do not seek to try a legal title, but to *try a fraud* in obtaining a pretended title. The case admits, that the deed was given with all legal formalities ; that it was regularly signed, sealed and delivered. But it is insisted, that however fair on its face, there is a defect in the procuring it, that should, in equity, avoid it. It is no answer, to say, that if it be a fraud, a court of law can try it ; for this only establishes a concurrent jurisdiction in a legal tribunal, but does not exclude the right of equity. Besides, a court of equity will relieve, where an unconscientious advantage has been taken of a person's situation, when the circumstances do not amount to fraud in the contemplation of a court of law : 14 *John. R.* 501 ; 2 *Ves. sen.* 155–6 ; 13 *Ves. jr.* 51.

4. Although, according to some decisions, a deed obtained from a drunken man will not be relieved against ; yet, according to the whole course of decision, if the drunkenness has enfeebled the mind of the grantor, and a conveyance is obtained from him, and especially by his relations, for a small consideration ; equity will interfere : 2 *P. Wms.* 203 ; 3 *P. Wms.* 131, *n.* 1 ; 2 *Ch. Ca.* 103 ; 4 *Bro. P. C.* 557 ; 7 *Bro. P. C.* 70.

5. It is true, as urged by the demurrants, that equity does not try an issue of *devisavit vel non.* But there is a clear distinction between a will and a deed ; and the complainants have a right to come here, upon the ground of fraud and imposition, to have

a deed of conveyance set aside and delivered up to be cancelled: *2 Atk. R.* 324; *2 Ves. sen.* 627.

6. It is admitted, that mere inadequacy of price is not sufficient to set aside a deed, unless it was gross and palpable. But inadequacy, connected with fraud, imposition, or oppression; or with an undue advantage taken of a weak or a drunken man; or even an embarrassed or distressed man; is sufficient to defeat any conveyance. Hence deeds obtained of *clients*, of *wards*, *heirs expectant*, or *weak men*, if there be not full value paid, are not sustained: 2 *John. C.* 23.

For these reasons, it is submitted, that the jurisdiction of this court in this case is fully established, and that the demurrer ought to be overruled.

THE CHANCELLOR. The bill charges the fraudulent procurement of a conveyance of real estate, and seeks that it may be set aside in favour of the heirs at law.

Two questions are made:

1. Has this court jurisdiction to set aside conveyances, in favour of the heirs at law? And,

2. Does this bill set out such a case as will authorize the court to interfere, if it have jurisdiction?

It must be admitted in this case, by both parties, that an ejectment might have been brought for the recovery of the possession of this property, by the heirs at law. There is no legal impediment or disability standing in the way to prevent the institution of such suit. The title of the heirs is strictly a legal title, and such are properly asserted and maintained in courts of law. But it does not follow, that because a party is at liberty to resort to an action of ejectment, therefore he has no remedy in this court. The principle is too broad, and the practice of the court is directly against it. There are many cases in which the jurisdiction of the courts of law and equity are concurrent, and the party is at liberty to seek relief in either.

Although an ejectment might have been brought at law, yet I cannot concur in the opinion of the counsel of the defendants, that this is what is technically termed an ejectment

bill. Such a bill is one brought simply for the recovery of real property, together with an account of the rents and profits, without setting out any distinct and substantive ground of equity jurisdiction. A bill of this description would be demurrable, and could receive no countenance in this court. It is of great importance in the administration of justice, that the principles of the two courts should be kept distinct; and where there is no proper ground of equity, the chancery will not interfere. Thus in the case of *Loker* v. *Rolle*, 3 *Vesey, jr.* 4, cited by the defendants' counsel, the bill was for a discovery and for possession and an account, stating that the defendant had got possession of the title deeds and mixed the boundaries. The chancellor was of opinion that he had no jurisdiction; that if the complainant had filed his bill for a discovery merely, he would have been entitled to it, but that there was no equity in his case to entitle him to any farther relief. He set out no hindrance or impediment to his legal title, which could be properly removed in a court of equity, nor any fraud which could authorize the court to assume jurisdiction. A similar case is to be found in 3 *Vesey*, 343, *Ryves* v. *Ryves ;* and the principle is not confined to cases of real property, but extends to all cases where the demand is purely legal, and the party can have an adequate remedy at law. A bill filed to recover the amount of a total loss on a policy of insurance, stating no sufficient ground of equitable relief, was dismissed with costs : 1 *John. C. R.* 463.

But this is a bill to set aside a fraudulent conveyance, filed by those who, without the incumbrance of such conveyance, are undoubtedly entitled; and I can entertain no question as to the jurisdiction. It is altogether different from an ejectment bill, and comes within the ordinary and often-exercised powers of this court. It is a well settled principle, says Chancellor Kent, that relief is to be obtained in this court not only against writings, deeds, and the most solemn assurances, but against judgments and decrees, if obtained by fraud and imposition : *Reigal* v. *Wood*, 1 *John. C. R.* 406.

In *Clarkson* v. *Hannay and al.*, 2 *P. Wms.* 203, a bill was filed by an heir at law, to set aside a conveyance made by the ancestor. It was made to appear that the ancestor was a weak

45

man, and easily to be imposed upon, and that the consideration was an annuity of twenty pounds sterling per annum for an inheritance of forty pounds per annum. The court granted relief, and ordered the estate re-conveyed, and the writings delivered up, and that the defendants should pay back the amount of rent they had received, beyond what they had paid for the annuity. So in *White* v. *Small*, 2 *Ch. C.* 101, certain deeds conveying the equity of redemption of certain premises, were ordered to be set aside on the ground of fraud and want of consideration. In *Evans* v. *Llewellen*, 2 *Bro. C. C.* 150, (better reported in 1 *Cox C. R.* 333,) the court went so far as to set aside a deed *improvidently* obtained for an inadequate consideration, though no actual fraud appeared to have been made use of. The case of *Bennet* v. *Vade and al.*, decided by Ld. Hardwicke, 2 *Atk.* 339, is a strong case, and similar to the present. The bill was brought by the plaintiff, as heir at law of Sir John Lee, to set aside the conveyance of his estate to the defendant, suggesting fraud and imposition, and that Vade had an undue influence over him. That learned chancellor had no doubt on the subject of jurisdiction, though it came before him incidentally in the cause; and he not only decreed that the deed should be delivered up to the plaintiff, with costs, but that the possession should be delivered up immediately. In *Cooper's Eq.* 125, it is said that the only case in which fraud cannot be relieved against in equity, concurrently with courts of law, is the case of fraud in obtaining a will, which if of real estate, must be in a court of law, and if of personal estate, is cognizable in the ecclesiastical court.

The case of *Shaftsbury* v. *Arrowsmith*, 4 *Ves.* 65, cited by the defendants' counsel, in which it is decided, that an heir at law has no equity except to remove incumbrances in the way of his legal rights, does not reach the principles of the bill now under consideration. It was a mere question of title, and there was nothing in it involving any principle of equity. The same remark may be made to the case of *Crow and al.* v. *Tyrrel*, 3 *Mad. Rep.* 99 : an heir out of possession came into court praying immediate relief, by having the possession of the property delivered up to him, and also the title deeds by which the estate was held. The vice-chancellor held, that if he came into chancery simply

for the possession of the property, the bill would have been clearly demurrable : that he prayed for a delivery of the title deeds did not help him, for the jurisdiction of the court in regard to the delivery of the title deeds, was confined to the person having possession of the estate. If the party recovered the possession of the estate at law, he might then come into equity for the possession of the title deeds.

But it is to be observed, that in those cases the plaintiffs did not come into court complaining of conveyances fraudulently and improperly obtained, and praying to be relieved from their operation. The relief sought was of a character altogether distinct. The correctness of those decisions is not called in question, but they have no relation to the case now before the court.

Entertaining no doubt as to this part of the case, I will merely refer to some authorities to be found in 3 *Cox, P. Wms.* 131, *in notis,* and to a late and valuable treatise on the jurisdiction of this court, by *Jeremy,* pp. 485-6.

The second question is, whether the bill discloses such a case of fraud as will authorize this court to interfere ?

Crane is represented by the bill, as we have already seen, to have been for eight or ten years habitually addicted to intemperance : that during the months of January and February he was "almost incessantly and uninterruptedly under the influence of liquor to such a degree as to be wholly incapable of business :" that when he refrained for a few days from immoderate drinking, his debility of body and mind was so great, as to render him incompetent to the rational transaction of any business: that when he was *either* in a state of actual intoxication, or so enfeebled or debilitated in mind, from the indirect influence of a long fit of intoxication, from which he was just then recovering, and while he was legally incompetent to make any disposition of his property, the defendants fraudulently and most unconscientiously, and without any, or if any, a totally inadequate and mere colourable consideration, procured from him the said conveyance. It is not stated that the drunkenness, and consequent disability, originated in any acts of the defendants ; no management or contrivance of that kind is charged against them. The question is, whether, under such circumstances, the deed can be relieved against.

Courts of equity have been liberal in protecting against the consequences of fraud, those who from weakness and imbecility are most liable to imposition, and also those who from their relative situation are peculiarly liable to be influenced by artful and designing persons around them. In carrying out their healthful principles, they have proved themselves the guardians of infancy, the protectors of the innocent and unwary, and the fearless and successful exposers of hidden machination and secret fraud. If there has been a suppression of the truth, or the suggestion of a falsehood, whereby the party is circumvented and deceived, equity will relieve against it. Where an undue advantage has been taken of the weakness or necessity of the party, or of any situation in which he is placed, rendering him peculiarly liable to impositions, this court will interfere. It goes upon the safe principle of protecting those who are not able to protect themselves.

It has, nevertheless, been made a question, how far any improvident act, caused by drunkenness or intoxication, may be relieved against; and it has been supposed by some, that if the intoxication was voluntary and not procured, that the party was without remedy. Thus in *Johnson* v. *Madlicott*, decided at the rolls by Sir Jos. Jekyll, in 1734, cited in 3 *P. Wms.* 130, it was expressly stated, that the having been in drink is not any reason to relieve a man against any deed or agreement gained from him when in that situation, for that were to encourage drunkenness: otherwise, if through the management or contrivance of him who gained the deed, &c. the party from whom such deed has been gained, was drawn into drink. So, too, Ld. Coke says: "Although he who is drunk is for the time non compos mentis, yet his drunkenness does not extenuate his offence, nor turn to his avail; but it is a great offence in itself, and therefore aggravates his offence, and doth not derogate from the act which he did at the time." This doctrine of the ancient common law is too harsh to be generally useful, and it contrasts rather unfavourably with the milder and more rational principles of the civil law. "It is evident, (says Pothier,) that ebriety, when it is such as to take away the use of reason, renders the person who is in that condition, while it continues, unable to make a

contract, since it renders him incapable of assent." *Traite des*
*Obligat. pt.* 1, *c.* 1, *s.* 1, *art.* 4. The case at the rolls in 1734,
already mentioned, was founded on the principles of the strict rule
of the common law. In 1747, the question was made before Ld.
Hardwicke, whether it was sufficient to set aside an agreement,
that one of the parties was drunk at the time. That learned chan-
cellor thought it was not, *unless some unfair advantage was*
*taken,* which did not appear in that case : *Cory* v. *Cory,* 1 *Ves.*
*sen.* 19. This decision was a departure from the old rule, and
grew out of better conceptions of equity. Instead of saying to
the wretched victim of intemperance, that the avenues not only
of law, but of equity were closed against him, and that he was
to be left as an outlaw in society, a prey to the cunning and cu-
pidity of the spoiler ; it extended to him the just protection of the
court, not for the purpose of setting aside his contract on the
ground of his infirmity, or crime, but for the purpose of looking
into his transactions, to see whether any advantage had been
taken of his unhappy situation. It would not favour ebriety, but
at the same time would not permit it to be taken advantage of
with impunity. The good sense of this principle has commended
itself to every court, and especially to the courts of equity. Hence
it has become the settled rule of the court, that it will not inter-
fere to assist a person on the ground of intoxication merely ; but
if any unfair advantage has been taken of his situation, it will
render him all proper aid : *Cooke* v. *Clayworth,* 18 *Ves.* 12.

The bill before me does not seek relief, on the simple ground
of intoxication. It charges expressly, that undue advantage was
taken of the situation of the grantor, and that the deed was frau-
dulently obtained. As evidence of the fraud, it relies upon the
inadequacy of the price, and states that even that price was not
paid. To this it has been answered, that inadequacy of price is
not of itself evidence of fraud, and can never be the ground of
setting aside a deed, unless accompanied with fraud or misrepre-
sentation. But this is only where the party is able to contract.
In the case of *Reynolds* v. *Wall,* 1 *Wash. Rep.* 164, it was
held, that where the party was intoxicated, inadequacy of price
was direct evidence of fraud ; and I think there can be no doubt
of the correctness of the decision. It is conceded, that the fact

July, 1831.

Crane et al.
v.
Conklin et al.

of the price not being paid, is no ground to set aside the deed. The fraud must be in the original transaction or contract, not in the non-fulfilment of the contract. If the original transaction was valid at the time, it is not rendered invalid by any subsequent act or omission of the defendants. The fact, nevertheless, is well charged; for although it does not change the nature of the transaction, it may, if proved, be strong testimony to show its real character: 5 *Peters*, 279, *Cathcart and al.* v. *Robinson.*

Upon the whole case, without going into any calculation, or giving any opinion as to the adequacy of the price, I am fully satisfied that this bill is, upon the face of it, clearly within the jurisdiction and principles of this court, and that the defendants must be put to their answer.

Let the demurrer be overruled, with costs.