Davren *v.* White.

---

## MARY DAVREN

*v.*

## ANNA WHITE et al.

In a case where incapacity is alleged, but no fraud is charged, the test is, Did the person whose act is brought in judgment possess sufficient ability, at the time he did the act, to understand, in a reasonable manner, the nature and effect of his act? If he did, his act is valid.

---

On final hearing on bill and answer and proofs taken in open court.

Davren *v.* White.

*Mr. John W. Herbert,* for complainant.

*Mr. Robert I. Hopper,* for defendant.

VAN FLEET, V. C.

The complainant seeks a decree nullifying a deed made by her mother to her sister. Two grounds are alleged : undue influence, and incapacity. The mother, Catharine McInerney, had had four children—three daughters and one son. The son died in the lifetime of his mother, leaving three children. The mother purchased a lot in the city of Paterson, with a small house on it, in April, 1869, at a cost of $1,400. She paid $1,100 in cash, and assumed the payment of a mortgage of $300. She subsequently paid the mortgage. She and her daughter, Anna White, the defendant in this case, took possession of the house and lot soon after the purchase and continued to live there together up to the time of the mother's death. The other children had married and left home and gone out to do for themselves, prior to the purchase. Anna worked for wages, both before and after the purchase of the house and lot, most of the time in the silk mills of Paterson, and gave all her wages to her mother, and her mother, in return, provided her with food and clothing. Anna also assisted her mother in the house-work. During the last years of her mother's life Anna did the most of the house-work, at least the hardest part of it. She did not marry until after her mother's death. Her mother had an attack of paralysis on the 27th of January, 1879. It was partial, involving only one side. She was then about seventy-seven years of age. She conveyed her house and lot to Anna on the 31st of January, 1879, and died intestate on the 4th of February following. The house and lot constituted substantially her whole estate. The complainant was in her mother's house when the deed was executed, and though she says she was not present at its execution, it appears that she was informed, on the day of its execution, that it had been executed. She claims to have known just what her mother's mental and physical condition was when the deed was executed. Her bill in this case was not filed until November 1st, 1882, and

not until after the person who drew the deed, was present at its execution and took her mother's acknowledgment, was dead.

There is no proof of undue influence; on the contrary, the evidence shows that the mother, from the time she acquired title, entertained a fixed purpose of passing the house and lot to Anna when she needed them no longer herself. She said, very soon after making the purchase, that she had bought the house and lot for Anna, and continued from time to time, after that, up until her last sickness, to declare to her acquaintances that she wanted Anna to have all she had when she was done with it. The reasons she gave why she wanted Anna to have all and others nothing were, the others had left her and gone out to do for themselves, some of them had abused her, none of them had done anything for her, while Anna had remained with her, had always been a good worker and given her all her wages and been satisfied with what she had allowed her. The mother's desire, therefore, that Anna should have all, was, under the circumstances, perfectly natural and proper. Anna's wages had assisted her mother in paying for the house and lot, and during the last years of the mother's life constituted their principal means of support. The daughter, after attaining her majority, was content, to please her mother, to remain subject to her mother's control as though she was still under age. A stronger exhibition of filial duty is rarely seen, and the mother would have been insensible to the just claims of a remarkable display of filial affection if she had not felt a strong desire to prefer Anna, in the distribution of her bounty, over her other children.

There is evidence tending to show want of capacity. The test in the class of cases to which this case belongs is, Did the person whose act is brought in judgment possess sufficient ability at the time he did the act to understand, in a reasonable manner, the nature and effect of his act or the business he was transacting? If he did, his act is valid. He may have been old or enfeebled by disease or irrational upon some subjects, yet, if he had sufficient ability to comprehend, in a reasonable manner, what he was doing, his act will bind him. This is the rule in the absence of fraud, and this is the rule which must govern

Davren *v.* White.

this case, for there is no evidence here which will warrant even a suspicion of fraud. *Lozear* v. *Shields, 8 C. E. Gr. 509 ; Eaton* v. *Eaton, 8 Vr. 108 ; Hill* v. *Day, 7 Stew. Eq. 150.* The complainant and two other witnesses swear that on the day the deed in question purports to have been executed Mrs. McInerney was in a state of almost total unconsciousness, and that she had so far lost the power of speech as to be unable, even when partially conscious, to make known her wants and desires. The decided weight of the testimony, however, shows that their statements in this regard are not true. The physician who attended Mrs. McInerney swears that he saw her on the day the deed was executed, and that he discovered nothing which led him to believe that her mind was not in its ordinary condition. He says he made inquiries of her respecting her physical condition which she understood and answered. He testified on the call of the complainant. Mrs. McInerney's grandson, Thomas McInerney, stayed with her during the night of the day on which she executed the deed. He says, during the night he lay down on the floor alongside of the stove, and that as soon as his grandmother observed what he had done she told him to get up and go upstairs and go to bed, that if he remained there he would take cold. Several other persons who saw and conversed with Mrs. McInerney during her last sickness, both before and after the execution of the deed, state facts and circumstances which they swear occurred in their interviews with her, which, if true, demonstrate very clearly that while her physical powers were seriously impaired she had the full use of her·mind, and was then quite as competent, mentally, to make a valid disposition of her property as she ever was. The case made against capacity by the complainant's proofs is at best quite dim and indeterminate. In my judgment, when the proofs in support of capacity are contrasted with the proofs against· capacity no ground whatever is left for doubt that the deed in question was the act of a sound mind.

The complainant's bill must be dismissed, with costs.