LORENZO TROXELL, appellant,

*v.*

ELIZABETH SILVERTHORN et al., respondents.

S. gave a bond of $3,500, which was afterwards assigned to his wife, and one of $1,500 to T., to pay certain creditors, both of which were secured by a mortgage on his lands, in which mortgage his wife did not join. The lands were worth about $3,000. T. began a foreclosure of the mortgage, and his solicitor obtained from S.'s wife a release of her dower, by representing to her that she would thereby receive from the increased price realized at the foreclosure sale two dollars for every dollar that T. received. She was an uneducated woman, and entirely unfamiliar with business affairs or the conveyance of lands, living away from her husband at the time, and had no opportunity to consult with other counsel, or to inquire of anybody as to the legal effect of her executing the release. The solicitor was also her husband's solicitor in a litigation then pending, and she talked with him about her buying in the mortgaged premises at the sale. After the release was executed, T. paid $580

Troxell v. Silverthorn.

to some of S.'s creditors.—*Held*, (1) that the solicitor's failure to explain to Mrs. S. the nature of her dower right, and the consequence of her releasing it, together with the fact that such release was without any consideration, constituted good ground for setting it aside in equity; and (2) that she was not estopped by T.'s subsequent payment of the $580 to her husband's creditors, nor liable to re-imburse him therefor.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions:

This bill is filed by Mrs. Silverthorn for the purpose of having declared void a release of dower executed and delivered by her. Her husband, William Silverthorn, executed a bond for $3,564, which was afterwards delivered to her, and also a bond for $1,500, which was afterwards delivered by assignment to the defendant and one Brands. These bonds were both secured by a mortgage upon the real estate of William Silverthorn, of course Mrs. Silverthorn not joining in the execution of the mortgage. As intimated, the $1,500 bond was assigned to Troxell and to Brands, for purposes which need not be disclosed further than to say that it was to pay his debts, together with such interest in the mortgage as secured the same. On the 15th of February, 1887, Troxell and Brands filed a bill to foreclose the mortgage and to secure a sale of the property. Mr. L. De Witt Taylor was their solicitor; as such solicitor, he issued a subpœna, and carried it with him from Belvidere, where Mr. William Silverthorn was living, to Newark, where Mrs. Silverthorn was then living with her daughter, and carrying on the business of keeping boarders. He presented the subpœna to Mrs. Silverthorn, and told her that a bill had been filed to foreclose the mortgage which secured these bonds, and spoke to her about the property and its value, and her interest in it, and asked her to acknowledge the service of the process which he then had, telling her that by so doing the expense of service by the sheriff would be avoided. She signed the acknowledgment of the service. He also asked her to release her right of dower in the premises so mortgaged, telling her that it was desirable to secure the sale of the premises free of her right of dower, or, in

other words, that it was desirable to pass a good title. He said to her that it would be to her interest, as well as to all concerned, to do so ; that, under the circumstances of the case, she would make two dollars out of the advance secured thereby, whilst the holders of the $1,500 bond would make one dollar in case of such release. He then had a release prepared for her to execute. Mr. Taylor says, under oath, that he read it to her very carefully. Mrs. Silverthorn says that he read two papers, but afterwards she qualifies this statement by expressing doubts and ignorance of what he actually did. That the paper was signed by her, and that she acknowledged it according to the forms of law, is apparent from an inspection of the paper itself, which is in evidence. Mr. Taylor said to her, at the time of the execution of the paper, or soon afterwards, that if she would send the bond to him at Belvidere when it became necessary to have the report of the master in the case, he would present her bond to the master, and have it reported upon. And she afterwards did so, and the amount due thereon was reported accordingly.

Several days after the execution of this release, Mrs. Silverthorn was in Belvidere by request, it is said, of Mr. Taylor, but if that be so, by the request also of her husband; but whether they were interested in having her there or not I do not think is material. It is sufficient to say that, when in Belvidere, she had a long interview with her husband, Mr. Taylor and Mr. De Witt about the liabilities of her husband and the payment of them. During that interview, she called attention to this release, observing that she did not fully understand it, whereupon it was produced by Mr. Taylor, and read and explained to her, after which she made no further objection to it until the time of the filing of this bill. After this interview, at which Troxell was present, and before he knew of any dissatisfaction upon the part of Mrs. Silverthorn, he and Brands proceeded, under the arrangement which before had been made, to make payments upon account of property which had been transferred to them, and paid at least $580, but they insist $800.

Now, the grounds upon which it is sought to have this release declared void are these : That Mr. Taylor acted without

Troxell *v.* Silverthorn.

sufficient regard to the position he occupied towards Mrs. Silverthorn, and that his conduct towards her, as appears in the evidence, develops what is termed a legal fraud ; and that she was at that time a married woman, in infirm health, away from her husband, and in the absence of her daughter, who was then living with her, and at a period of the day when her duties in the discharge of her avocation were particularly pressing.   It is claimed that she was thrown off her guard, from the fact known to her that Mr. Taylor was the solicitor and counsel of her husband in another cause which was then pending in the court of appeals ; and that Mr. Taylor, during the interview, expressed a hope that the decree, which was against Mr. Silverthorn in the court below, would be reversed ; and that, more effectually to accomplish his purpose, he appeared in great haste, thereby depriving her of all opportunity for reflection, or consideration, or consultation.   Counsel for complainant says, under these circumstances : "We are asked to believe that Mrs. Silverthorn deliberately conveyed away her right of dower in the valuable house and lot which had so long been her home, without one cent of consideration or advantage."

Is it true that this inquiry points to the exact situation ?   Is it true that Mrs. Silverthorn executed that conveyance without any consideration or advantage to herself?   It is true that she got no cash or other valuable thing in hand, but with reference to the future, should she survive, it cannot be said with truth that the transfer was without any consideration—at least so it seems at first view.   It must be remembered that her husband at that time was living, and that he still is ; and that, so far as could have been foreseen, he had as reasonable a prospect of long life as she ; she then, as she declared under oath, being in very feeble health.   What, then, was the nature of her interest which she released, and how valuable was it ?   It was an inchoate interest in dower in said lands, and truly hers absolutely during her life.   If she survived her husband, the value of that interest would depend upon the entire value of the premises.   *If she did not survive him she never would reap any benefits therefrom, unless she should reap them in her husband's lifetime, and by

some such transaction as the one in question. Had she not re-
leased, and had the sale under the foreclosure taken place, she
would have had an interest of some value, which would increase
in value in proportion as the probabilities of her surviving her
husband should increase; and would diminish in like ratio if the
probabilities should be the other way. Now, dealing with the
case as we have it, can it be said that it is at all likely to result
in profit to her, so that upon principle there really was a valua-
ble consideration to her in the execution of this release? I have
no doubt that Mr. Taylor said to her, that, by the execution
of this release, she would be benefited two dollars, and the
defendant Troxell and Brands, one dollar, out of the increase
of the consideration. I understand he meant by this to say,
that as her claim, which was $2,500 and over, exceeded the
claim of Troxell and Brands, which was $1,500, so, in that
proportion, would her receipts from the purchase-money at
the foreclosure sale be increased over their receipts from said
sale. Now, how can this be? Plainly, if the value of her
husband's interest in the property, subject to her right of
dower, was sufficient to pay the amount due upon the mortgages,
and all the costs of the foreclosure, there can be no application
whatever of this method of reasoning, for then the mortgagees
would realize every dollar that was due to them, and the holder
or owner of the inchoate right of dower would continue to hold
that unimpaired. But if it should turn out that the property so
mortgaged should not be worth the amount due upon the mort-
gage, independently of the right of dower of Mrs. Silverthorn,
then, most manifestly, at first blush, there is an opportunity for
Mrs. Silverthorn to improve her present financial condition by
executing such a release. For example, suppose that the prop-
erty so mortgaged is only worth the amount due upon these en-
cumbrances, when free and discharged of every other lien, then
there can be but little doubt that Mrs. Silverthorn, upon such
sale, would enjoy a very considerable profit by the release of her
dower. The receipts of such a sale would be cash to her, whilst
her inchoate right of dower would remain in expectancy, with a
strong doubt, under the circumstances, of her living as long as

Troxell v. Silverthorn.

her husband. The evidence before me does not very satis-factorily disclose the true value of the premises. All that there is upon that subject comes directly or indirectly from Mrs. Silverthorn herself, she placing it at $2,500 or $3,000. If that be the true value, or approaching it in any just sense, then it is said that Mrs. Silverthorn has been very greatly benefited by the execution of the release. Being in feeble health, her prospect of longevity cannot be said to be good, and her interest as dowress in the premises would be, at best, comparatively small should she survive her husband. But when it is considered that, under the circumstances, he has an equal opportunity of survivorship, it may well be said to have been the mark of wis-dom for her to accept all that she can get now, after giving to Troxell and Brands their just proportion of such interest in her dower according to the amount of their mortgage. These views, I think, present the case on behalf of the defendant.

In all this there is nothing to make it apparent that the defend-ant, through his solicitor, Mr. Taylor, intended, by acts or direct speech, to wrong, or in any way intended to do injustice to, Mrs. Silverthorn. And this is the most favorable view that can be given to the case in behalf of the defendant; and this, I think, he is most justly entitled to; for, in one sense of the word, it may be regarded as an ordinary business transaction, as one of common occurrence; for married women are very frequently called upon to surrender their inchoate rights of dower in the real estate of their husbands; and were it not in this particular case that the person executing the release was at the time away from her husband and among strangers, and most manifestly but little accustomed to business, and perhaps almost never before engaged in any real estate transactions involving the conveyance of title or the perfecting of title to lands, the inquiry would rest here.

But this view does not cover the whole case. All of the facts and circumstances, which were material to the completion of such a transaction with a married woman, were not presented to Mrs. Silverthorn. I am not at all prepared to say, from the testi-mony, that there was any effort at concealment, or that, in any

sense, any material facts were intentionally withheld. It is enough, under the law, to know that they were not shown to her; that they were not brought to her attention so that she could fully realize the extent of what she was called upon to do. It was not shown to her that all the money which was taken into the account (that is, the two dollars spoken of, which Troxell and Brands would receive) was in reality to spring from her title and her interest in the land which she was called upon to release. It was not shown to her that this title, such as it was, was hers absolutely, and that it remained hers, to all intents and purposes, so long as she lived, whether she survived her husband or not; and that she could dispose of it, whether for much or for little, entirely as her own. It was not shown to her that the two dollars, which it was said she would get, were already her own; and the one dollar, which it was said the other parties would get, was, also, already her own; and that that would be a gift absolutely to them, or to the creditors of her husband. In no sense was she given to understand that she was doing this without the slightest consideration, as clearly appears when the veil is removed. Now, as I understand the cases, these things ought to have been shown to her. I think it was the duty of Mr. Taylor to make them known. It was her right to understand that the sale under the foreclosure would not destroy her inchoate right of dower in the lands, and that she would retain that same right after the sale. If a release was desirable for the benefit of all persons interested, it should have been explained to her that she could release at the sale for such consideration as she might demand; and that if she did so release, such consideration would be hers absolutely. It cannot be supposed that Mrs. Silverthorn intended to give $100, or any other sum, to Troxell and Brands, or to her husband's creditors, since she had not joined in the mortgage, and was, at the time of signing the release, engaged in an arduous struggle for a comfortable living, independently of her husband. If she had been told that her inchoate right of dower was such an encumbrance as would cause the property to bring $300 to $600 less than its real value, and that after the sale she might realize some such sum for her interest in order to remove the encum-

Troxell v. Silverthorn.

brance, I am not prepared to say that she then would, as a matter of course, have given this release.   Considering the ways of men in such business matters, the inevitable inference is that she would not have so released.

Now, as at first intimated, the subpœna to answer and the form of her release were presented to Mrs. Silverthorn at the same time, and in the course of a very few minutes she had signed the acknowledgment of service of the one, and had executed and acknowledged the other.   It was simply read to her with a statement to the effect that it would facilitate the sale and perfect the title of the lands which were being foreclosed, and that for every dollar that Troxell would receive, by virtue of such release, she would receive two dollars.   Now, it will be seen that all the other material circumstances, to which I have just adverted, were absent from her mind.   It must be acknowledged that she did not know, nor did she in any sense consider, nor was it at all present to her mind, that she was in reality making a gift, without any consideration to herself, of a certain amount of money to Troxell, and through him to the creditors of her husband.

I have above stated that the evidence seemed to establish the value of the property mortgaged at $2,500 to $3,000, and this from the testimony of Mrs. Silverthorn.   In addition to her testimony is the value fixed upon this property by the persons present at the meeting referred to in Mr. Taylor's office, when the deed of release was produced at the request of Mrs. Silverthorn.   A paper was then prepared submitting the situation of affairs to Mrs. Silverthorn, in which the property is valued at $3,000.   The amount due upon her own mortgage was nearly $4,000, so that there was no possibility of her receiving the amount that was actually due to her upon this acknowledged claim to which she had an indefeasible title independently of her dower.   While this was so, it was perfectly natural and business-like for her to take advantage of the situation, retain the benefit of the encumbrance which she held in her right of dower, and purchase the property, if she could get it at a reasonable and satisfactory price ; her prospects of doing which would be farther

22

and farther removed, as the title should be perfected by the removal of the encumbrance which she held within her own hands. Now, it was not made known to her that, if she desired to buy the property, she would stand in a better position to do so by not releasing her right of dower. But she did make known the fact, confidentially, to Mr. Taylor, that she was considering whether or not to buy the property. This communication to him, together with other circumstances in the case, such as the fact that she knew Mr. Taylor was her husband's counsel in another important matter, to which Mr. Taylor then adverted, shows that she placed confidence in Mr. Taylor, and did not then regard him as a stranger with whom she would be obliged to deal at arm's length. Therefore, to my mind, one material and important fact is ever present in the case; and that is, that, while there was an appearance of Mrs. Silverthorn's being benefited by the declaration to her that if she would sign the release she would get two dollars for every dollar which Troxell would receive, there was in reality no consideration at all for the transaction moving to Mrs. Silverthorn, for she was being paid the two dollars out of her own treasury, and was making an unqualified gift to Troxell out of the same fund.

I have only adverted to the fact that Mrs. Silverthorn spoke of buying the property, for the purpose of showing her confidence, at the time, in Mr. Taylor, not for the purpose of giving any especial weight to the probabilities that she might buy, however much she might be enabled to turn the fact of her having an encumbrance to her own benefit in case the way to purchase presented itself. Counsel, in his brief, represents that, in case Mr. Silverthorn should die, Mrs. Silverthorn's interest in dower in these lands would be equal to about $486.48. Now, it is the one-third of that sum which she gives away absolutely by signing the release. True, it is said, and justly said, that she has it not now to give; but the fact nevertheless remains, and it can be with equal justice claimed, that the encumbrance exists, and that it was deemed an advantage to Troxell to remove it, and that she has a right to the full benefit of whatever profit arises therefrom.

But, it is urged that, by this arrangement, Mrs. Silverthorn gets the two dollars, or two-thirds of the $486.48, and counsel quotes from the case of *Perkins* v. *Elliott, 8 C. E. Gr. 526, 535,* where the chief-justice says: " In the absence of fraud or imposition, this court cannot attempt to measure the adequacy of the interest which has induced her action. Whenever her property or rights are involved she has a competency to contract, and consequently must decide for herself as to the value of that which she will acquire ·by an outlay of her money, or as an equivalent for her engagements." But it must be remembered that here Mrs. Silverthorn receives no consideration at all. Whatever it is pretended she will get she already has, and whatever advantages may accrue to her and to Troxell in connection with her release belongs to her singly, and that at any time she can turn them to her own individual account for whatever consideration she sees fit to accept. In order to enforce this view, the counsel also calls attention to the case of the *Homœopathic Mutual Life Insurance Co.* v. *Marshall, 5 Stew. Eq. 103, 111,* in which the court says: " The impolicy of admitting such evidence to countervail the official certificate, is obvious. If such testimony were admitted, the danger to titles depending on the deeds of married women would be great indeed, especially where the officer by whom the acknowledgment was taken had died, or, as in this case, had gone beyond reach, so that his testimony could not be obtained. The stability of such titles would manifestly often depend on the memory or integrity of those whose interest it would be to nullify them."

I have already intimated, sufficiently clearly, I think, that the difficulty in this case is not in the simple execution of the deed, not whether the instrument was read to the married woman, or whether she acknowledged it according to the forms required by law, but whether she had such understanding of the true nature of the transaction as she was entitled to have in order that the execution of the instrument might be binding upon her according to its legal import and effect. Nor, in coming to these conclusions, is it necessary to depend upon the testimony of Mrs. Silverthorn alone; for if her testimony were out of the case, and

she were here objecting to the interposition of this release as she
now is, Mr. Taylor's frank statement as to what took place
would leave an immense, yea, a measureless void in this trans-
action, without anything more than the frailest semblance of a
consideration to bridge it over. I have yet to learn that equity,
will allow one person to acquire a profit at the hands of another,
under such circumstances, without any consideration. It has not
the semblance of inadequacy simply, but is without any. In
cases of gross inadequacy of consideration, fraud is always pre--
sumed, much more when there is none. It is a legal fraud.
The manifold application of the principle which governs in such
cases, is shown by the following authorities: *Cook* v. *Cole*, 2
*Hal. Ch. 522, 627; Doughty* v. *Doughty, 3 Hal. Ch. 227*
(though reversed in *3 Hal. Ch. 643,* sustains the principle); *Hunt*
v. *Hunt, 2 Beas. 161; Weber* v. *Weitling, 3 C. E. Gr. 39, 441;*
*Crane* v. *Conklin, Sax. 346; Wintermute* v. *Snyder, 2 Gr. Ch..*
*489; Gifford* v. *Thorn, 1 Stock. 702; Cummins* v. *Little, 1 C. E.*
*Gr. 49; Evans* v. *Llewellin, 1 Cox C. C. 332, 333, 2 Bro. C. C.*
*150; Cocking* v. *Pratt, 1 Ves. Sr. 400; Broderick* v. *Broderick,.*
*1 P. Wms. 239; Osmond* v. *Fitzroy, 3 P. Wms. 129; Stillwell* v..
*Wilkins, Jac. 280; Osgood* v. *Franklin, 2 Johns. Ch. 1, 23; Port-*
*more* v. *Taylor, 4 Sim. 182, 212; Underhill* v. *Horwood, 10 Ves..*
*209; Ware* v. *Horwood, 14 Ves. 28; Butler* v. *Miller, 15 W. R.*
*779.*

I call especial attention to the case of *Baker* v. *Monk, 4 De*
*G., J. & S. 388;* and also, *Clark* v. *Malpas, 4 De G., F. & J.*
*401; Kerr Fr. & Mis. 143; Hallett* v. *Collins, 10 How. 174;*
*Bigelow's Fraud 279.*

I have said that the defendant insists that he made payments
on the strength of this release which he would not have other-
wise made. The amount of such payments is said to be over
$800, but is certainly $580. And this, resulting from the re-
lease, it is said, enables the defendant to stand on the doctrine·
of estoppel for his protection; and that, in any event, the com-
plainant should re-imburse him for the sums so paid. I am not
convinced that the doctrine of estoppel can be invoked at all in
this case; but if it can, then certainly there was no such reliance·

McShane *v.* McShane.

upon the release as is claimed, for counsel admits that the complainant's interest in dower was not over $486, one-third of which ($162) only could be claimed by the defendant, which being so, one is not called upon to suppose that the defendant paid $800 or even $580 because of such release. Besides, whatever he may have paid, it is not made to appear that he has not other moneys of the husband, whose assignee he is, out of which to re-imburse himself. It is certain, indeed, that he is still the holder of the interest of William Silverthorn in the mortgage first above mentioned.

I think the said release should be declared void and of no effect, and that Lorenzo Troxell should be required to execute a deed of quit-claim to all or any right, title or interest in said premises, by virtue of such release. The complainant is entitled to costs.

*Mr. L. De Witt Taylor*, for the appellant.

*Mr. J. M. Roseberry* and *Mr. H. S. Harris*, for the respondents.

PER CURIAM.

This decree unanimously affirmed, for the reasons given by the vice-chancellor.