Complainant seeks the nullification of her promissory note, bond and mortgage, evidencing and securing her purported indebtedness to defendant in the sum of $18,500, based upon their alleged fraudulent procurement and her want of independent advice touching their execution and delivery.
The pertinent events, as revealed by the evidence, which led to and culminated in the execution and delivery of the *Page 513 
now challenged instruments are these: On August 31st, 1930, complainant's husband died leaving a will under which he left his entire estate to her and appointed her as the sole executrix thereof. As evidenced by his promissory notes held by defendant, he was, at the time of his death, indebted to it in the approximate sum of $27,850, which, however, was, by subsequent payments, reduced to $18,500.
The ravages of his last illness had so affected him that, for almost a year preceding his decease, he was wholly incapable of looking after his own business and affairs. During that period, and for about nine months following his death, his business and affairs were ably and efficiently conducted and managed by complainant with the aid of her daughter, Emma. While in the discharge of her said duties, complainant, first as his attorney in fact and then as the executrix of his estate, executed and delivered to defendant notes in renewal of those evidencing his indebtedness to it, as and when the latter matured. On December 2d 1931, defendant apprised her of its determination not to accept any such further renewal notes, whereupon it demanded and received payment from her of the then matured notes, the necessary funds for which were procured by her then making, and defendant discounting, her own personal promissory note in the sum of $18,500, against the proceeds of which, after having been deposited and credited to her personal account, she then drew and delivered her check to defendant. Upon maturity of her said personal note she executed and delivered another in renewal thereof and thereafter continued to issue renewal notes up until August 2d 1932, when defendant demanded and received from her, as collateral security, the now questioned collateral note, bond and mortgage.
With respect to these facts, there is no dispute. Complainant, however, claims to have been deceived by defendant into executing and delivering to it the above mentioned instruments; and as grounds for their invalidation asserts and relies upon her alleged right to and lack of independent advice, plus defendant's alleged deception. Either or both of these contentions, if established by proper evidence, will *Page 514 
be sufficient to entitle her to the relief which she now seeks.Crane et al. v. Conklin et al., 1 N.J. Eq. 346; Hutchinson v.Tindall, 3 N.J. Eq. 357; O'Conner v. Rempt, 29 N.J. Eq. 156;Troxell v. Silverthorn, 45 N.J. Eq. 330; LeGendre v.Goodridge, 46 N.J. Eq. 419; affirmed, 48 N.J. Eq. 308; Eggers
v. Anderson, 63 N.J. Eq. 264.
But, independent of those cases of implied or constructive fraud which arise out of a breach of duty, trust or confidence presumed from the fiduciary relations subsisting between the parties concerned, the charge of fraud cannot be sustained by mere suspicion, inference or anything short of clear and convincing proof; the burden of adducing which type of evidence always rests upon the one asserting the fraud. Trust Company ofOrange v. Garfinkel, 107 N.J. Eq. 20; Pahy v. Pahy, 107 N.J. Eq. 538; Kerlinger v. Newman, 111 N.J. Eq. 10; Fortunel v.Martin, 114 N.J. Eq. 235; Ebert v. Givas, 109 N.J. Eq. 495;Security Acceptance Corp. v. Donegani, 113 N.J. Eq. 290. A minute examination of the testimony adduced fails to disclose a scintilla of credible evidence wherefrom even an inference might fairly or reasonably be drawn that any of the defendant's representatives perpetrated any fraud, misrepresentation or imposition upon complainant, or that she, by reason of any such alleged misconduct, was induced to execute any of the now challenged instruments.
In attempted substantiation of her charge of fraud, complainant asserts that defendant's representative told her that it would not accept in renewal of the then maturing note, made by her as executrix, another note similarly executed by her; but that it would, however, accept a note signed by her with the words "executrix, c.," omitted; and that she, by reason thereof, as well as his representations that by so doing "she wouldn't be changing her position one bit, but that it would be just the same as before," executed and delivered to it her personal note of which that now under consideration is a renewal.
That any such representations were ever made by him is unqualifiedly denied by defendant's representative who is *Page 515 
alleged to have made them. This denial finds abundant cogent support in the incontrovertible fact that complainant's personal note was neither given to nor received by defendant in renewal of the then matured note made by her as executrix; but on the contrary was made and received for discount purposes in order to raise the funds necessary to enable her to comply with defendant's demand for payment of the then matured note made by her as executrix.
But even assuming arguendo, although the contrary is the fact, that defendant's representative had made the representations attributed to him; nevertheless it is manifest that complainant, in executing and delivering her original personal note and those in renewal thereof, acted upon her own independent judgment, rather than in reliance upon any such alleged representations. According to her own testimony and that of her daughter, it was not until after the latter had first apprised her that by so doing she would be changing her position to one of personal liability and after the voicing of her objection to becoming so obligated, that she, in compliance with defendant's demand that she either do so or else, in addition to rendering her account as executrix, forthwith restore to the estate such of its funds as had been appropriated to her own personal use, finally executed and had defendant discount her said personal note. Also significant is the fact that, although she thereafter, from time to time, executed and delivered notes in renewal thereof, it was not until after defendant in the latter part of 1933, had instituted suit to enforce payment of her said indebtedness to it, that complainant, for the first time, was heard to say or claim that said note was procured from her by means of fraud or any improper conduct on the part of defendant.
The rule is well settled that to sustain the fraud theory of her case, it must clearly appear that she justifiably believed and acted upon defendant's alleged representation to her damage, and that said representations were the superinducing cause of her having so acted. Parker v. Hayes, 39 N.J. Eq. 469; Byard v.Holmes, 34 N.J. Law 296; Warwick v. Hutchinson,45 N.J. Law 61; Northwestern Mutual Life *Page 516 Insurance Co. et al. v. Brautigam, 69 N.J. Law 89; Lembeck v.Gerken, 86 N.J. Law 111; Braechert v. Greswold, 112 N.Y. 454;Long v. Warren, 68 N.Y. 426; Taylor v. Guest, 58 N.Y. 262;Laidlow v. Organ, 2 Wheat. 178, 195, Prescott v. Wright, 4Gray (Mass.) 451; Hicks v. Stevens, 121 Ill. 186;11 N.E. Rep. 241; Hocker v. Midland Steel Co., 215 Ill. 444;170 N.E. Rep. 445; Gillespie v. Fulton Oil Co., 236 Ill. 188;86 N.E. Rep. 219; Insurance v. Ash. 81 Md. 278; 17 Atl. Rep. 69.
It is apparent, however, from her own admissions that the superinducing cause of complainant's execution of her personal note, those given in renewal thereof and the bond and mortgage as collateral security therefor was not defendant's alleged representations. She herself testified that the truth of these alleged representations were, when made, challenged and denied by her own daughter who then stated that "as I see it, it does change her [complainant's] position" and that she thereby would be "forcing an obligation on herself."
Notwithstanding this, however, complainant, being confronted with the choice of either executing such a note and thereby "changing her position and forcing an obligation upon herself" or else making immediate restitution of estate funds misappropriated by her, besides filing her account as executrix, chose the former, rather than comply with the latter, of defendant's demands, and consequently executed and delivered her personal note to it. The evidence is convincing that complainant then, and always thereafter, fully knew that by so doing she was substituting her personal liability for that of the estate on its indebtedness to defendant which was then paid and satisfied. A clear manifestation of such knowledge on her part may be discerned in her own testimony, that of her daughter, and in her signed personal financial statement which her daughter had prepared for her and had delivered to defendant, and which recites the full payment of all debts of the estate and lists, amongst and as part of her personal liabilities, the two notes, aggregating $18,500, executed by her as executrix. In addition to these, there is the letter of November 6th, 1933, written by her daughter, *Page 517 
with her knowledge and consent, to defendant's president wherein she refers to the "collateral note" in the name of "Ann A. Hayward" as having been given for an obligation assumed, and requests a reduction of one per centum in the interest rate to be charged thereon; a request which the latter by his letter of November 10th, 1933, granted, and in appreciation of which she, on November 16th, 1933, transmitted her thanks to him for his "kind consideration, which mother and I appreciate," in having reduced the interest on the note for the "Ann A. Hayward obligation."
An examination of the whole case fails to disclose any evidence of a character capable of leading a dispassionate mind to any conclusion other than that complainant was not the victim of any misrepresentation upon the part of defendant in executing the instruments in question, but that her action in that regard was the result of her own deliberate judgment, with a full understanding of its nature and effect, in order to avoid the necessity of complying with what to her seemed the more drastic of the defendant's alternative demands — the restoration of all estate funds misappropriated by her and the rendition of an account of her stewardship.
Passing now to complainant's other ground for relief — her alleged lack of independent advice touching upon the execution and delivery of the now questioned instruments. In entering upon a consideration of this inquiry, there suggests itself as a preliminary question: Was complainant's position then such as to bring her within the class of those to whom the law accords the benefits of the independent advice rule? If not, then this theory of her case must likewise fail.
No suggestion is to be found in the proof that a relation of trust and confidence existed between the parties. In lieu thereof, complainant adduced proof tending to show that, because of complainant's periodic attacks of hysteria, nervousness and emotionalism, her mental capacity would become affected to the extent of rendering her incapable of comprehending the nature or character of her then acts and making her amenable to the exercise of undue influence. In this connection she urges and stresses the testimony of Dr. Butterfield, *Page 518 
her friend and family physician of long standing, to the effect that he, prior to and in the month of December, 1931, had treated her "for a nervous condition," which manifested itself in periodical attacks of hysteria, insomnia and mental depression as a result of which she would be rendered incapable of understanding what she was then doing. But this same witness also conceded that, with the exception of the duration of those attacks, her mind was clear and fully capable of comprehending the nature of the business which was being transacted by her.
Assuming, but not so deciding, that her mental condition would, during the occasions of those attacks, become so affected as to render her incapable of comprehending the nature of her acts and hence entitle her to have the independent advice rule invoked with respect to her acts on and during said occasions; nevertheless complainant cannot here successfully invoke that rule in aid of her attempt to invalidate her acts now under consideration, because there isn't an iota of evidence that these acts transpired while she was laboring under the effects of any such attacks.
Although the manifestations of these afflictions were, according to the testimony of her own doctor, readily discernible to the layman and physician alike, it is significant, indeed, that neither her daughter who was present at all of the transactions in question, nor her own cousin and attorney who was present at some of them, even as much an intimated that she, on any of those occasions, was suffering from any of said attacks, or that her mind was such as to be incapable of comprehending what she was then transacting. On the contrary, the conclusion from all of the evidence is inescapable that she fully understood the nature and import of each of her said transactions. This was conceded by her cousin and then attorney by whom the bond and mortgage, at her direction, were drafted, and before whom they were signed and acknowledged by her.
The rule is well settled that even though a person may be enfeebled by disease, or even irrational upon some subjects or subject to periodical mental aberrations or deficiencies, *Page 519 
yet if he, at the time of his questioned transactions, was possessed of sufficient mentality to fully comprehend the nature and effect of the business then being transacted by him, his said acts will be valid and binding upon him. Judged by this rule, and there here being no proof of fraud, complainant's now challenged transactions, must be held to be valid and binding upon her.Davren v. White, 42 N.J. Eq. 569; Farley et al. v. FirstCamden National Bank and Trust Co., 107 N.J. Eq. 272;152 Atl. Rep. 245; Security Acceptance Corp. v. Donegani et al.,113 N.J. Eq. 281; 166 Atl. Rep. 209; Kelso v. Kelso, 96 N.J. Eq. 354; 124 Atl. Rep. 763.
Even if it could be said, although the evidence is clearly to the contrary, that complainant could rightfully invoke the independent advice rule in aid of her present attempt to have the challenged instruments annulled, nevertheless it is an established fact that, during and throughout all of her negotiations and transactions with defendant, she did receive independent and competent advice from her daughter, who manifestly was fully conversant with and comprehended the nature and effect of the business then being transacted, as well as from her own cousin-attorney, an able and long standing member of the bar of this state, who, pursuant to her instructions and after advising her of their nature and legal effect, drafted and delivered the very instruments which she then signed and the validity of all of which she now seeks to impugn.
 There will be a decree dismissing the bill of complaint. *Page 520