## H. H. HARTSOCK. *vs.* WILLIAM E. RUSSELL.

*Mistake—Resulting Trust—Guardian and Ward—Question as to the rights of a Judgment creditor of a Guardian, as against property conveyed to the Guardian to secure a Loan of his Ward's money, where the Deed was absolute on its face and did not disclose the Trust—The Registry Laws, and sec. 23 of Art. 16, and sec. 29 of Art. 24 of the Code, not applicable to the Case—Effect of the discharge of the Guardian under the Bankrupt laws upon the rights of the Ward.*

By order of the Orphans' Court, O. as guardian of R. was authorized to loan to W. and D. a sum of money which as such guardian he had in his hands for investment, the same to be secured by mortgage on real estate. The loan was made to the parties named who as security therefor executed to O. an assignment of certain reversionary rights and interests in and to certain lots of ground in the City of Cumberland, said assignment being made to O. in his own name and without reference to his character as guardian. The loan was always treated and dealt with by O. as belonging to the estate of his ward, and he intended the assignment to be made to him as guardian, and neither he nor the other parties to it knew or understood that it was not so drawn, and made to express the real intention and object of the parties. After the recording of the assignment, certain judgments were recovered against O. upon one of which, rendered for a debt contracted subsequent to the recording of the assignment, an execution was issued, and levied upon the property assigned. Subsequent to the recovery of this judgment O. applied for the benefit of the bankrupt law, and obtained his final discharge thereunder. On a bill filed by R. after attaining his majority, praying to have the judgment creditors of O. restrained by injunction from proceeding by way of execution against the property embraced in the assignment, it was HELD:

1st. That as between R. and O. the former was entitled to relief either on the ground of mistake, or of a resulting trust.

2nd. That the judgment creditor of the trustee, whether he became such before or after the creation of the trust, in a case like the

present, had no superior equity as against the property, to that of the *cestui que trust*, whether the conveyance be taken in the name of the trustee by mistake, or by design of the trustee, unaffected by any act or bad faith on the part of the *cestui que trust*.

3rd. That the Registry laws have no application to a case like the present.

4th. That sec. 23 of Art. 16 of the Code, had no manner of application to the case, the deed in question having been duly recorded within the time prescribed, and the creditors seeking to charge the property not being the creditors of the party making the deed, but of the party to whom the deed was made.

5th. That no question could arise in the case under sec. 29 of Art. 24 of the Code, requiring an affidavit of the mortgagee to the *bona fides* of the consideration for the mortgage.

6th. That the discharge of O. under the Bankrupt law, in no way affected R's right to relief, as by sec. 5053 of the Revised Statutes of the United States, no property held by him in trust was allowed to pass to his assignee in bankruptcy.

APPEAL from the Circuit Court for Allegany County, in Equity.

The bill in this case was filed by the appellee for the purpose of procuring a decree to correct a mistake, which was charged to have been committed in the execution of an instrument of writing of the 13th of December, 1873, by William Walsh and. Bernard A. Dougherty, to Charles H. Ohr, instead of to Charles H. Ohr, as guardian of the complainant, and to have a conveyance of said property to himself. The bill averred that Ohr was the complainant's guardian, and as such had a large sum of money in bank, and that under an order of the Orphans' Court, dated the 16th of December, 1873, he loaned the sum of $3300, to said Walsh and Dougherty, and took from them the aforesaid instrument of the 13th of December, 1873, as security for such loan. The instrument was very informally drawn. It set out as follows: "For value

received, we hereby assign, grant and set over to Charles H. Ohr, the following lease and leasehold properties, with all the powers, privileges and benefits therein contained, to wit;" and then proceeded to describe three several leases, executed by Walsh and Dougherty, to different persons, and describing such leases by reference to their dates, where recorded, or to be recorded, and the amount of rental reserved in each to the grantors. This instru- ment was duly executed, acknowledged and recorded within time. On the 1st of January, 1877, the appellant obtained a judgment against Ohr, and subsequently caused an execution to be issued thereon, under which Edward Manly, sheriff, levied upon the properties men- tioned in the deed from Walsh and Dougherty to Ohr. A judgment was also obtained against Ohr, by one George W. Broestler. The bill prayed that the instrument in question might be reformed so as to conform to the inten- tion of the parties, and that Ohr might be decreed to con- vey all the interest in said leasehold properties, he might have acquired by virtue of the said instrument, to the complainant; and further prayed an injunction to restrain Hartsock, Broestler and the sheriff from making sale of said properties under any execution on said judgments to satisfy the same; and for general relief. An injunction was issued. A motion was made to dissolve the injunc- tion. The Court (PEARRE, J.) passed an order refusing the motion and continuing the injunction until the final hearing. From this order the present appeal was taken.

The cause was argued, by agreement of counsel, before BARTOL, C. J. and ALVEY and IRVING, J., and the decision was participated in by MILLER and ROBINSON, J.

*Benjamin A. Richmond,* for the appellant.

*S. A. Cox,* for the appellee.

ALVEY, J. delivered the opinion of the Court.

This is an application on the part of the appellee to obtain the benefit of a conveyance or assignment of certain reversionary rights and interests in and to certain lots of ground in the city of Cumberland, executed by Walsh and Dougherty to Charles H. Ohr, and which assignment, as it is alleged, was taken by Ohr as guardian of the appellee, and for the latter's benefit, though the instrument of assignment, by its terms, is to Ohr in his own right, and without reference to his character of guardian.

It is alleged and shown, indeed admitted by the defendants, that Ohr was the guardian of the appellee, and that, as such guardian, he had in his hands certain money of his ward for investment; that, on the 16th of December, 1873, the Orphans' Court passed an order authorizing him, as guardian, to loan of his ward's money the sum of $3,300 to Walsh and Dougherty, the same to be secured by mortgage on real estate; that such sum was loaned to the parties named, and thereupon they made to Ohr, as security for the loan, the assignment of the 13th of December, 1873; that such loan has been uniformly treated and dealt with by Ohr as belonging to the estate of his ward, and that he has never, in any manner whatever, claimed or pretended that he had any right or interest in the loan thus made and secured, other than as guardian of the appellee. It is also alleged, and by agreement admitted, that Ohr intended the instrument of assignment to be made to him as guardian, and that neither he nor the other parties thereto knew or understood that it was not so drawn, and made to express the real intention and object of the parties, until the appellant Hartsock had levied execution on the property assigned as the individual property of Ohr.

It is further stated in pleading, and admitted by agreement, that after the date of the assignment and the recording thereof, the judgments of Hartsock and Broest-

ler were obtained against Ohr, and that execution was issued on the judgment recovered by Hartsock, which was levied on the property assigned, and that the judgment was for a debt contracted subsequent to the date and recording of the assignment.

It is also alleged and admitted, that since taking the assignment, and the recovery of the judgments just mentioned, Ohr has applied for the benefit of the bankrupt law, and has received his final discharge thereunder; and that, although the appellee has attained his age of majority, he has not received any portion of the money loaned to Walsh and Dougherty, and that they have paid no part of the principal sum loaned.

The instrument in question is very informally and inartificially drawn, but as the sheriff, by his levy, and all the parties concerned, appear to treat it as a grant or assignment of the reversion in the lands leased, carrying the right to the rents as an incident, we take that to be the real intent and object of the paper, and shall so treat it in determining the rights of the parties as they are presented on the record before us.

Upon the facts of the case as we have stated them, which are all admitted by the defendants, the appellee founds his claim to relief, first, upon the fact of mistake and inadvertence in the draft of the instrument, and prays that it may be rectified; and secondly, as an alternative, inasmuch as it is an admitted fact that his money formed the only consideration for the assignment, he prays that he may have the benefit of it by way of resulting trust. He also prays to have the judgment creditors of Ohr restrained by injunction from proceeding by way of execution against the property embraced in the assignment, and for general relief.

The judgment creditors of Ohr thus sought to be restrained, while they admit the facts relied on by the appellee, insist that the rights and equities of the appellee

are subordinate to those asserted by them in their character of judgment creditors, and that a Court of equity is powerless to afford the relief prayed.

If this were a case as between the appellee and Ohr, it is fully conceded on the part of the appellant there could be no question of the appellee's right to relief in either aspect in which the case is presented. The fact of the mistake in the preparation of the instrument is made out in the clearest and most satisfactory manner; and that the sole consideration for the assignment was the money of the appellee, loaned under the order of the Orphans' Court, is in no manner disputed. But apart from all question of mistake, the principle is perfectly well settled, and is founded in the plainest dictates of justice, that if a guardian or other trustee be authorized to purchase land or take a mortgage for his ward or *cestui que trust*, and he makes the purchase with the trust money, but takes the conveyance in his own name, without any declaration of the trust, or indication in what character he holds it, a Court of equity will always be prompt to declare the property thus acquired to be held as a resulting or constructive trust, for the benefit of the party whose money has been so invested. In such case, the Court will presume that the trustee meant to act in pursuance of his trust, and not in violation of it. 2 *Sto. Eq.*, *sec.* 1210, and the authorities there cited. Such being the well established doctrine of a Court of equity, the question here is, whether the position of a judgment creditor of the trustee is such as to give him a superior equity as against the property thus held, to that of the *cestui que trust*, whether the conveyance be taken in the name of the trustee by mistake, or by design of the trustee, unaffected by any act or bad faith on the part of the *cestui que trust?* That the judgment creditor of the trustee, whether he becomes such before or after the creation of the trust, in a case like the present, has no such superior equity would

appear to be plain upon the most obvious principles of justice.

The judgment lien fastens only upon the beneficial interest of the debtor in the land, especially as that lien is regarded by a Court of equity. If the interest of the debtor be a legal estate, subject to an equity that can be enforced, the judgment will be a charge upon the estate subject to that equity; and if the interest be an equitable estate only, the judgment will be a charge upon that interest and nothing more. "Upon a judgment obtained against a mere trustee, a Court of equity would never permit the trust property to be applied in satisfaction of the judgment; and for the same reason, if the property is subject to a trust short of its full value, the judgment can only in equity affect that which remains after the trust is satisfied, for this alone is the property of the debtor." 1 *Phill. Ch.,* 730. This principle has been repeatedly acted on in this Court, and is the foundation of the decisions in several cases; as, for instance, the case of *Hampson vs. Edelen,* 2 *H. & J.,* 64, where the vendor held the legal title of the land sold, in trust for the vendee; and, again, the case of *Repp vs. Repp,* 12 *Gill & J.,* 341, where the vendee took the legal title, absolute on the face of the deed, but subject to a charge in favor of his brothers and sisters created by contract not of record. In these cases it was held that the rights and equities of the parties claiming under the contracts were paramount and superior to that of any judgment creditor of the holder of the legal title, becoming such judgment creditor subsequent to the date of the contracts of purchase; and consequently no judgment liens attached as against those parties. When and as against whom a judgment lien will or will not attach, and the nature of that lien, are subjects that have been recently considered by this Court, and without restating the propositions then decided, we

need only refer to the cases of *Knell vs. The Green St. Build. Assoc.*, 34 *Md.*, 67, and *Dyson vs. Simmons*, 48 *Md.*, 207. Suffice it to say, that the principles there laid down are in strict accordance with what we decide in this case.

But it is insisted, on the part of the judgment creditors, that the Registry laws of the State forbid the granting the relief prayed; that because the assignment is in terms absolute, without mention of the object for which it was taken, showing of record an apparent right to the property in the assignee, therefore, as against his judgment creditors, the appellee is precluded from showing either the mistake or the circumstances that would give rise to the resulting or constructive trust as against Ohr, the judgment debtor. Such, however, we apprehend not to be the case. On the contrary, we think it clear, the Registry laws have no application to a case like the present. If the appellee could be thus precluded, the most flagrant injustice would be done, and the Court stayed in affording relief upon what may be regarded as among the plainest and best established principles of its jurisdiction. As has been well said, a Court of equity would be of little value, if it could suppress only positive frauds, and leave mutual mistakes, innocently made, to work intolerable mischiefs, contrary to the real intention of the parties. It would be to allow an act, originally innocent, to operate ultimately as a fraud, by enabling the party who receives the benefit of the mistake, to resist the claims of justice, under the shelter of statutes framed to promote it. This a Court of equity will never allow. 1 *Sto. Eq.*, *sec.* 155. See also same vol., sec. 165. The sec. 23 of Art. 16 of the Code, relied on for the appellant, has no manner of application to the case. That section of the statute contemplates, and only contemplates, the case of the debtor having made a deed which has not been duly recorded, but which may be recorded under a decree of a Court of equity. It simply provides, in respect to

the creditors of the grantor, that the recording of the deed under the decree shall not "in any manner affect the creditors of the *party making such deed,* who may trust such party after the date of the said deed." Here the deed has been duly recorded within the time prescribed, and the creditors seeking to charge the property are not the creditors of the party making the deed, but of the party to whom the deed was made.

Nor can any question arise here under sec. 29 of Art. 24 of the Code, requiring an affidavit of the mortgagee to the *bona fides* of the consideration for the mortgage. If the instrument involved be regarded as a mortgage, and therefore within the purview of the statute, it is perfectly good and valid as between the parties thereto, and those claiming through or under the mortgagee, without regard to the affidavit. No creditor or purchaser of Walsh or Dougherty is asserting claim or title against the operation of the instrument, and the attempt by the judgment creditors of Ohr to seize and apply the property to the payment of their judgments, amounts to an affirmation, on their part, of the validity of the assignment to their debtor. Indeed they are in no position to question the validity of the assignment for want of an affidavit under the statute.

As we have already stated, Ohr has been discharged under the bankrupt law of the United States; but that fact in no way affects the appellee's right to relief; for, by the Rev. Stats. U. S., sec. 5053, no property held by the bankrupt in trust was allowed to pass to his assignee in bankruptcy. And as to the effect of the bankrupt's discharge upon the right of his judgment creditors to proceed by execution against the property involved, that is a question that becomes unnecessary for this Court to consider, in the view taken of the case.

We shall therefore affirm the order appealed from, continuing the injunction, and remand the cause, to the end that there may be a decree passed by the Circuit Court

giving the appellee relief in accordance with the principles stated in the foregoing opinion.

*Order affirmed, and*
*cause remanded.*

(Decided 12th December, 1879.)