ETTA L. BOYNTON, ET AL.,

*vs.*

CHARLES E. REMSON, ET AL.

*Mortgages: usury; objection, how raised. Mortgage sales:*
*property sold at simultaneous sales; objections;*
*money borrowed, but not used.*

Upon a mortgage sale, no objection can be heard because of
usury having been charged; such objection can be considered
only upon the statement of the final account of the auditor.
                                                    p. 106

Where the money borrowed by the mortgagor for the pay-
ment of taxes, etc., due upon the land mortgaged, was declined
by him and remained in bank to his credit, it does not affect the
lien of the holder, or his assignee, of the mortgage that had been
given to secure the money so borrowed.              p. 106

Where the holders of two mortgages upon the same property
endeavored to sell it on the same day at rival auctions, and each
sale was preceded by public warning by a representative of the
opposing interest, it is to be considered as ground for setting
the sale aside, especially when the sale appears to have brought
considerably less than witnesses testified that it was worth.
                                                    p. 107

Although the mortgagor consented to the foreclosing of a first
mortgage, after he found the third mortgage was to be fore-
closed, he did not thereby waive his right to objections to any
inadequacy of price he would otherwise have been entitled to
raise.                                              p. 108

*Decided June 19th, 1918.*

Three appeals in one record from the Circuit Court for
Anne Arundel County. In Equity. (THOMAS, C. J.)

The facts are stated in the opinion of the Court.

The causes were argued together before BOYD, C. J., BRIS-
COE, PATTISON, URNER and STOCKBRIDGE, JJ.

*Daniel R. Randall, Arthur Peter* and *Fred. A. Rhodes,*
for the appellants.

*Charles Clagett* and *Ridgely P. Melvin,* for the appellees.

*Lucius Q. C. Lamar, James M. Munroe* and *Charles
Clagett* filed a brief for G. Howard White, one of the appel-
lees.

URNER, J., delivered the opinion of the Court.

The farm of Charles E. Remson, containing about three
hundred acres of land and situated near Annapolis was sub-
ject in 1915 to a mortgage for $25,000. Interest on the
mortgage debt and taxes on the property being in arrears to
the amount of about $1,500. Mr. Remson borrowed the
money to meet those charges from Mr. G. Clifton Sunder-
land, of Annapolis. In order to obtain the sum required
Mr. Remson gave his promissory note to Mr. Sunderland for
$2,500 secured by a second mortgage on the farm, and the
note and mortgage were used by Mr. Sunderland as collateral
security for a loan to himself of the same amount from the
Annapolis Banking and Trust Company, the proceeds of
which he deposited to Mr. Remson's credit in that institu-
tion. As previously agreed, Mr. Remson at once paid $1,000
out of the fund to Mr. Sunderland for providing the sum of
$1,500 thus left available for the use to which it was in-
tended to be applied. Mr. Sunderland paid one-half of the
$1,000 bonus to Mr. George T. Melvin, who as President of
the Annapolis Banking and Trust Company had received and
submitted to the Board of Directors the application for the
loan, and had individually agreed, for an equal share of the
bonus, to bear an equal part in financing the purchase of the

property in case a foreclosure became necessary. These transactions were completed on December 1st, 1915. On the same day a check for $1,500, signed by Mr. Remson, was mailed from the bank to the representative of the first mortgagee, to be used for the payment of interest and taxes, but it was returned to the bank with the statement that it would not be accepted. The check thereafter remained at the bank subject to Mr. Remson's disposal. It was not until March 2nd, 1917, however, that he had the check canceled and made other use of the fund against which it was drawn.

After declining to receive the check referred to the first mortgagee made an effort to exercise the power of sale in his mortgage, but this was restrained by preliminary injunction, and the mortgage was shortly afterwards paid out of the proceeds of a new mortgage loan of $30,000 which Mr. Remson obtained from Mr. J. Henry Strohmyer, of Baltimore, by paying therefor a commission or bonus of $3,000 in addition to $895 interest in advance for six months. A further mortgage loan of $8,559.40, for which Mr. Remson appears to have paid a bonus of $1,000 to the lender, was then procured from Mrs. Etta L. Boynton, of the City of Washington. The proceeds of this loan were applied to the payment of judgments and taxes amounting to over $5,300, unsecured debts of about $200, an attorney's fee of $750 and other expenses incident to the two mortgage transactions just mentioned, both of which were conducted for Mr. Remson by his counsel, Mr. Frederick B. Rhodes. As a result of the payment of the $25,000 mortgage, and the existing judgment indebtedness, out of the funds realized from the Strohmyer and Boynton loans, the Sunderland mortgage became the first lien on the Remson farm. The two subsequent mortgage loans were effected by Mr. Rhodes in the belief that a release of the Sunderland mortgage could be obtained on the ground that the object for which it was given had failed and the fund it produced for Mr. Remson had not as yet been utilized for any purpose. Efforts were accordingly made by Mr. Rhodes, as counsel for Mr. Remson, to accomplish that result, but

while an understanding was reached with Mr. Ridgely P. Melvin, as attorney for Mr. Sunderland and the bank, that the mortgage would be released upon terms which appear to have been quite moderate, yet the sum agreed upon was not paid, and eventually, as already stated, the $1,500 fund derived from the mortgage loan was appropriated by Mr. Remson to his own use. All of the mortgages had then matured and were in default. An extension of time on the Strohmyer mortgage was secured, but proceedings were begun for the exercise of the power of sale in the Boynton mortgage by Mr. Rhodes, as attorney therein named for that purpose, his professional relations with Mr. Remson having previously terminated. In the advertisement of the sale thus undertaken no reference was made to the Sunderland mortgage, but it was stated that the property would be sold subject to a prior mortgage of $30,000. The sale was advertised to be held at the Court House door in Annapolis at 12 o'clock M. on April 3rd, 1917. When Mr. Sunderland learned of this proceeding he consulted his counsel, Mr. Ridgely P. Melvin, who represented also the bank, which held the Sunderland mortgage by assignment as collateral security for the $2,500 loan, and, with the consent of Mr. Remson, it was determined to exercise the power of sale in that mortgage so as to anticipate the Boynston sale by which the first mortgage was apparently to be ignored. The Sunderland mortgage was thereupon assigned by the bank to Mr. Melvin as its attorney, who, after filing his bond as required by law, advertised the mortgaged property for sale at the Court House door in Annapolis on April 3rd, 1917, at 10:30 o'clock A. M. A suit was brought by Mrs. Boynton to restrain the sale under the first mortgage on the ground that it was invalid, but at a hearing on bill and answer, shortly before the day of the sale, a preliminary injunction was refused. At the Sunderland sale the property was sold for $40,000, and at the Boynton sale an hour and a half later it was bought by the same purchaser for $11,000, subject, in terms, to the $30,000 mortgage held by Mr. Strohmyer. Announcement was made at the Sunderland sale, by

an attorney for Mrs. Boynton, that a purchaser at that sale would not obtain a good title, while at the Boynton sale it was publicly stated by Mr. Melvin, representing the first mortgagee, that the property had already been sold.

Exceptions to both sales were filed by Mr. Remsen on the ground that, because of the confusion arising from the conflicting sales and announcements to which we have referred, his property was sold in both instances at a substantial sacrifice of its real value. Mrs. Boynton excepted to the ratification of the first mortgage sale upon grounds which will be presently stated and considered. Mr. Melvin, as assignee of the Sunderland mortgage, excepted to the Boynton sale, but the question raised by his exceptions need not be determined. The purchaser also filed exceptions seeking a decision upon the validity of the first mortgage and the ratification of the sale under which it might be found that he would obtain a good title. Testimony was taken in support of the various exceptions, and by agreement the same evidence was treated as being available in the injunction suit relating to the Sunderland mortgage, that case and the exceptions to the sales being brought to final hearing at the same time.

The grounds of objection urged against the sale under the Sunderland mortgage, apart from the question as to the adequacy of the price, are that the consideration mentioned in the mortgage is usurious and fictitious, and that the third mortgage loan was made upon the assurance by the mortgagor that he had received no part of the loan secured by the first mortgage and that it would be released. In disposing of these objections in the Court below, JUDGE THOMAS held that the Sunderland mortgage was not rendered invalid by the fact that the mortgagor was charged $1,000 for the loan, or by the circumstance that the $1,500 fund which the mortgage produced was not used for the purpose for which it was borrowed and was not actually drawn upon by the mortgagor until long after the second and third mortgages were executed. In this conclusion we fully concur. As JUDGE THOMAS said

in his opinion: "The law is well settled in this State that usuary does not invalidate a mortgage or affect the power of sale contained therein. In the case of *Md. Perm. Land and Bldg. Soc.* v. *Smith,* 41 Md. 516, the Court said that the question of usury 'can only arise upon the statement of the final account by the auditor, and cannot be urged as an objection to the sale,' and in the case of *Powell* v. *Hopkins,* 38 Md. 1, we find the same rule stated in the following language: 'The exaction of usurious or illegal interest (if proved by the evidence) does not invalidate the mortgage or affect the power to sell * * *. The Court of equity in which the sale is to be ratified, and the proceeds distributed, has full authority and jurisdiction to adjust the question of interest between the parties.' See also *Miller's Eq. Proc.,* p. 563, and cases cited in the note, and *Chipman* v. *Farmers and Merchants Nat. Bank,* 121 Md. 343."

There was no evidence in the case that the Boynton loan was induced by any statement by Mr. Sunderland or the Annapolis Banking and Trust Company that the first mortgage would be released or that the consideration it recites had not been paid. It clearly appears from the testimony that the bank had in fact loaned to Mr. Sunderland, and the latter had paid to Mr. Remson, the amount of the loan which the mortgage was intended to secure. The fact that the money could not be applied to the objects first proposed, but remained in bank subject to Mr. Remson's order, could not affect the rights of the original holder, or of the assignee of the mortgage, whose money had been actually and unconditionally appropriated to the loan. They could certainly not be deprived of the security of the mortgage lien merely because of Mr. Remson's statement to the third mortgagee that the Sunderland mortgage would be released because he had not then received the fund to which it referred.

The Court below concluded also that the objection to the first mortgage sale on the ground of inadequacy of price could

not properly be sustained. With this view we have been unable to agree.

In our opinion the evidence is sufficient to support the contention that the conditions surrounding the sale not only tended to prevent the disposition of the property for an adequate price, but in fact produced that injurious result. It was almost inevitable that the efforts of two mortgagees to sell the same property at rival auctions held on the same day would cause a state of conflict and confusion by which both sales would be seriously prejudiced. In addition to being hampered by the mere fact of such competition, each of the sales was further embarrassed by a public warning against its validity by a representative of the opposing interest. It would be really remarkable if the fair market value of the farm had been realized under such adverse conditions.

The price of $40,000 for which the property was sold under the first mortgage was said by several witnesses to represent, in their judgment, its full value. There was testimony, however, that some years ago the owner had received from separate sources offers of $55,000 and $65,000 for the farm, which he declined. A county assessor testified that the property is worth $50,000 for farming purposes alone, and two other witnesses estimated its value, respectively, at $55,000 and $75,000. It was proven that a prospective bidder, who had visited the property, and had come from the City of Washington to attend the first mortgage sale, even though he had been told by his counsel that the United States Government had offered $75,000 for the farm, remained away from the sale after he learned that a second sale was to be made under another mortgage, because he did not wish to become involved in the litigation which would be expected to result from such a conflict of interests. By the advertisement for both of the sales, as well as by the evidence, emphasis was laid upon the fact that this 300 acre farm is exceptionally valuable, not only because of its fertility and improvements, and its availability and actual use

for the purposes of an extensive dairy enterprise, but also because of its large water frontage, its adaptability to profitable subdivision, its proximity to Annapolis and the Naval Academy, and its adjacency to the Government Experimental Station and other public property in process of extensive development.

Our review of the case has brought us to the conclusion that the mortgagor's interests have suffered material injury as a result of the concurrent exercise of the powers of sale contained in the first and third mortgages, and of the effect of each of the vendors to discourage bidding at the sale conducted by his competitor. While Mr. Remson consented to the advertisement of his property under the first mortgage, after he found that the third mortgage was being foreclosed, we do not think he should be held to have thereby waived in advance any valid objection he might otherwise be entitled to raise as to the inadequacy of the purchase price reported. In consenting to such a proceeding he probably did not anticipate that the validity of the sale would be publicly contested at the time it was attempted to be made, and he certainly did not agree that his property should be sold for less than it was really worth. According to our conception of the case, a serious loss may result to the mortgagor from the ratification of either of the reported sales, but we are confident that no injustice would be done to any interest in the case if a resale is ordered. The third mortgagee, whose claim will be partly lost if the first sale is confirmed, might be very materially benefited if the farm is resold, and the first mortgagee is amply protected by priority of lien and cannot be injured by a resale of the property under conditions which will admit of its fair market value being realized. The second mortgagee appears to be well secured and is taking no part in the litigation. The purchaser would apparently lose the benefit of an attractive bargain if neither sale is sustained, but it is not unjust to him to hold that he is not entitled to retain the

accidental benefit resulting from the extraordinary and adverse conditions under which both sales occurred.

The conclusion we have reached upon the exceptional facts of this case does not disregard, and is not inconsistent with, the general rule relating to objections to sales on the ground of inadequacy of price as applied in previous decisions of this Court. *McCarty* v. *Hamburger,* 112 Md. 40; *Edgecombe Park Co.* v. *Finney,* 121 Md. 326; *Hunter* v. *Highland Land Co.,* 123 Md. 647; *Vollum* v. *Beall,* 117 Md. 620; *Carroll* v. *Hutton,* 91 Md. 380; *Shaw* v. *Smith,* 107 Md. 526.

If Mr. Remson should be unable to refund his existing mortgage indebtedness, and a resale cannot be thus avoided, it should be made along under the power of sale in the first mortgage, so that the title may be sold clear of all liens and under conditions favorable to a sale that will be advantageous to all parties concerned.

The decree of the Court below will be affirmed in so far as it dismissed the bill for an injunction against a sale under the first mortgage, and sustained the exceptions to the sale reported under the third mortgage, but with respect to the ratification of the sale under the first mortgage, it will be reversed.

> *Decree affirmed in part and reversed in part and
> cause remanded, the costs to be equally paid
> by the first and third mortgagees.*