The Security Acceptance Corporation, a corporation of the State of New Jersey, complainant-appellant,

*v.*

David Donegani et ux. et al., defendants-appellees, and Bogota National Bank, defendant-appellant.

[Submitted February term, 1933. Decided May 15th, 1933.]

*Messrs. Collins & Corbin (Mr. Edward A. Markley,* of counsel), for the complainant-appellant.

*Messrs. Hart & Vanderwart,* for the defendant-appellant Bogota National Bank.

The opinion of the court was delivered by

Heher, J.

The bill in this case was filed to foreclose a mortgage dated November 8th, 1926, made by Helen Donegan (also known as Donegani) to one Sloane for $3,000, to secure payment of

her bond. There was a provision for the payment of monthly installments of $30 on account of the principal, for a period of one year thereafter, and the balance of the principal sum at the expiration of that period. The bond and mortgage were assigned by Sloane to the Bogota National Bank on November 12th, 1926, and by the latter to the complainant on March 18th, 1927. There was a valuable consideration for each assignment. The consideration paid by complainant was $2,754.10.

The mortgagor died on January 19th, 1929, prior to the filing of the bill of complaint, and her heirs-at-law (her children) were made parties defendant. In the answer filed on their behalf, the execution of the bond and mortgage by their mother was admitted, but it was denied that she was indebted to Sloane at the time. It was further alleged in the answer, and in a counter-claim praying that the bond and mortgage be delivered up for cancellation, that they were procured by Sloane from their mother by fraud, while she was in a feeble condition, and under the influence of drugs and medicines, and therefore incapable of exercising her free will and judgment, and that at the time of the execution of the bond and mortgage, she did not have the benefit of independent advice.

The vice-chancellor concluded, and rightly so, that there was no evidence to sustain the charge that the mortgagor, at the time of the execution of these papers, was under the influence of drugs or medicines. He found, however, that at the time of their execution, the mortgagor was in a sick and enfeebled condition, and did not have the benefit of independent advice; that she was not fully informed as to the nature of the transaction, and was unaware of the significance of the papers executed; and that they were procured by fraud practiced by Sloane. He held that the assignee took subject to the equitable defenses interposed by the heirs-at-law, and the complainant could therefore have no relief. A decree was entered dismissing the bill, and ordering the surrender of the bond and mortgage for cancellation, in accordance with the prayer of the counter-claim.

We are unable to concur in the view of the vice-chancellor that the proofs established fraud. There is no basis in the evidence for a finding that Sloane obtained an undue or unconscientious advantage over the mortgagor. True, the mortgagor was not, at the time, indebted to Sloane. The latter was, however, a friend of the family, and was in financial difficulties. At various times he lived with members of the Donegani family—in the mother's home in her lifetime, and with some of the children after her death. He was not, however, an occupant of decedent's home at the time of the execution of the bond and mortgage and had not been for at least two years prior thereto. He then resided at the home of one of decedent's daughters. This was his place of residence for a period of four years. At the time of the hearing before the vice-chancellor, he made his home with two of decedent's children. These children joined with the others in resisting foreclosure.

Sloane was in straitened financial circumstances, and appealed to decedent for aid. He was indebted to a bank in the sum of approximately $2,000. He had sought a loan elsewhere, and found that he would be required to pay a bonus of $200. When informed of this, Mrs. Donegan characterized it as a "mighty fine proposition." She finally agreed to execute and deliver to him, for his accommodation, a bond and mortgage for $3,000, in consideration of the payment to her of $200. Shortly after the execution and delivery of the bond and mortgage, Sloane paid, in satisfaction of this obligation, the sum of $205. He paid $170 to her direct, and $35 in payment of a fire insurance premium owing by decedent.

There is no support for the conclusion that Mrs. Donegan did not fully understand the transaction. She was sixty-five years of age. While in ill health, she was not enfeebled mentally. One of her children, Margaret, a party defendant who took the witness stand on behalf of herself and her codefendants, admitted that prior to the execution of the bond and mortgage, her mother told her that Sloane had asked for financial assistance, and that she had agreed to a loan of her credit, supported by the mortgage security, for his accommo-

dation. Her mother informed her that Sloane "was going into bankruptcy," and had solicited her aid; that "it would only be on paper, and he would pay her back within a year." She later told her daughter that she had executed the papers required to carry out the plan. Apparently, Sloane was a man of integrity. He was so regarded by the members of decedent's family. This transaction did not tend to impair their confidence in him. When asked on the witness stand if she was still friendly with him, Margaret replied, "yes, we believe him honest enough to pay back." She undoubtedly understood the nature of the transaction. When asked if she knew that Sloane was indebted to her mother, she replied, "yes, I knew my mother gave him some money to liquidate some debts in the Bogota bank," and that "that was in connection with the mortgage."

The inference is irresistible that decedent, fully understanding the transaction, executed the bond and mortgage not only to assist Sloane in his financial need, but to profit by the bonus which he would have been required to pay elsewhere, and which he had agreed to pay to her. There was another piece of evidence establishing decedent's knowledge and understanding of the nature and effect of the transaction. On November 19th, 1927, decedent acknowledged, in the form of an affidavit signed and sworn to by her, that she had made the mortgage in question to Sloane, and that there was then due thereon the principal sum of $2,894.55, and interest from March 8th, 1927: Complainant requested this acknowledgment at the time of the assignment to it, but Mrs. Donegan's signature could not be obtained then because of her ill health. The vice-chancellor found that this document was also procured by fraud, but the evidence furnishes no support for this conclusion. She understood that she was thereby acknowledging the existence of the mortgage, and the amount due thereon.

The evidence leads inevitably to the conclusion that decedent fully understood the transaction, and was not induced by fraud or misrepresentation to execute the mortgage. Fraud must be clearly proved. *Ebert* v. *Givas, 109 N. J. Eq. 495.* She had the mental capacity required for the making of a

valid contract. There was an utter lack of evidence of undue influence, and under the circumstances here existing the exertion of such influence could not be presumed. It was not essential to the validity of this transaction that decedent have competent and independent advice. Assuming that this rule may be invoked in testing the validity of a contract of this character, there was lacking the essential relationship of trust and confidence between decedent and Sloane. *Kelso* v. *Kelso, 96 N. J. Eq. 354; Conners* v. *Murphy, 100 N. J. Eq. 280.* In the last cited case, Mr. Justice Trenchard, speaking for this court, held that the fact that the donor of a gift was one of a number of boarders living in the boarding house kept by the donee was not sufficient to raise a suspicion of fraud or undue influence, in the absence of circumstances showing the relation of trust and confidence.

The contention that the mortgage lacked consideration is without merit. Although as between the parties a contract is wholly without consideration, yet if it is made for assignment, and is assigned for a consideration, the latter becomes the consideration of the original contract. *Bogart* v. *Stevens, 69 N. J. Eq. 800.* This is the case here.

The decree appealed from will therefore be reversed, with costs, and the record remitted to the court of chancery to the end that a decree may be there entered in accordance with the views herein stated.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Heher, Van Buskirk, Kays, Hetfield, Dear, Wells, Dill, JJ. 14.