STACK, ᴇᴛ ᴀʟ. *v.* MARNEY, ᴇᴛ ᴀʟ.

[No. 351, September Term, 1967.]

*Decided January 13, 1969.*

44

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SMITH, JJ.

*Kurt Berlin* for appellants.

*Hillel Abrams* for appellee Jana Marney; no brief filed for appellee Mitchell Quick.

BARNES, J., delivered the opinion of the Court.

The appellants, Paul Carroll Stack and Margaret E. Stack, his wife, appeal from an order of the Circuit Court for Montgomery County (Pugh, J.), in equity, dismissing their petition and their bill of complaint for an injunction to stay a foreclosure sale under a second deed of trust in the face amount of $3300 on the property 4710 Bartram Street in Rockville, owned by the Stacks. The appellees, who were the defendants below, are Jana Marney, the substituted trustee under the second deed of trust and Mitchell Quick, who arranged for the sale of the $3300 promissory note and the securing second deed of trust, to Ruth Torr (not a party to the case) for $3047.47.

There is little dispute about the essential facts. In June of 1964, the Stacks, being then pressed for ready money, answered an advertisement by Quick for the purchase of second deed of trust notes, and asked him to lend them the needed funds. The net amount then needed by the Stacks was $2000. Quick declined to lend them any money personally, stating that he was not in the money-lending business but dealt with existing trust notes. Quick agreed to act for the Stacks and help them create a note and deed of trust for resale to others. It was agreed that the face amount of the note would be $3300 and that the Stacks would receive the amount of $2000 cash needed by them. Quick then prepared the note and securing deed of trust in accordance

with the understanding and presented them to the Stacks for execution. Both the note and the second deed of trust were dated June 24, 1964, had the face amount of $3300, and were payable with interest at 6% per annum in monthly installments of $63.80, credited first to the payment of interest and the balance upon the payment of the principal. The note was payable to June C. Kent, Quick's secretary, recited that it was secured by a second deed of trust and was subject to a first deed of trust for $15,500 with interest payable at 5¼%, placed by Interstate Building Association. E. F. Blanchard and Mitchell Rasberry, were named as trustees in the second deed of trust, but, as indicated, Marney was later substituted as trustee for them. The second deed of trust was duly recorded on July 1, 1964.

Attached to the note was a list of payments on the note indicating the date of payment, the interest due, the credit to principal and the balance of principal due, giving effect to the principal payment. This list shows that the first payment was made on September 24, 1964 and that the last payment was made on April 4, 1967 at which time there was a balance of principal due of $1,751.03.

The Stacks admitted the execution of the note and second deed of trust, that they understood that the principal amount would be for $3300, at 6% interest and payable as set forth in the instruments. They also admitted that they were to receive $2000 from the sale of the note and second deed of trust.

After some effort, Quick found a purchaser in Miss Torr who was willing to pay $3,047.47. After receiving the money, Quick had the note endorsed to Miss Torr and delivered it and the second deed of trust to her. Both Quick and Miss Torr testified that she purchased the note as an existing, valid instrument without knowledge of how it was created. Quick paid certain expenses from the proceeds of sale and a fee to himself. He paid the Stacks $2200, or $200 more than originally contemplated, as the Stacks admitted. The Stacks paid the specified payments on the note for over two and one-half years, that is, until April 4, 1967, after which they defaulted and have since paid nothing. Miss Torr subsequently placed the second deed of trust in the hands of an attorney for foreclosure, and the property was advertised for sale on August 15, 1967. Prior to the

sale, the Stacks filed a petition and obtained an ex parte injunction to restrain the holding of the foreclosure sale upon their allegations of fraud on the part of Quick and Miss Torr. Later the Stacks filed a bill of complaint in which, in addition to the alleged fraud, they alleged that the second deed of trust was invalid for the lack of an affidavit of consideration and because of an alleged violation of the usury laws of Maryland.

After answers were filed and testimony taken on the merits, the Chancellor heard arguments, filed a written opinion and by an order dated September 26, 1967, dismissed both the petition and the bill of complaint and required the Stacks to pay the costs. In our opinion, the Chancellor's order was correct and will be affirmed.

The Stacks abandoned their allegations of fraud in the trial court and before us. It is not clear whether they abandoned their allegations of usury in the trial court, but the Chancellor did not refer to this point in his opinion and the appellees contend that the point was abandoned in the trial court. The record however does not specifically disclose such abandonment and, inasmuch as the Stacks raised the point in their brief and at the argument, we will treat this issue as being properly before us on appeal.

The Stacks, as appellants, present three questions for our determination:

1. Does the payment of consideration to the Stacks 36 days after the recordation of the second deed of trust and 43 days after its creation, make the second deed of trust invalid as a security instrument?

2. Does the absence of an affidavit of consideration make the second deed of trust invalid?

3. Should the Chancellor have determined that there was usury in the transaction and have determined the correct amount due the noteholder?

In our opinion all of these questions must be answered in the negative.

1.

The second deed of trust can clearly be challenged in equity for want of consideration. The Chancellor may inquire into the real consideration on which the contract is based even though

the contract is under seal and recites that it was given for a value received. *Snyder v. Jones,* 38 Md. 543, 552 (1873). The Chancellor in the present case could, therefore, inquire into the consideration for the second deed of trust.

It is well established that the execution of a deed of trust to secure a note dated prior to the actual making of the loan does not invalidate the deed of trust. As Mr. Justice Whittle of the Supreme Court of Appeals of Virginia stated in *C. B. Van Nostrand & Co., Inc. v. Virginia Zinc & Chemical Corp.,* 126 Va. 131, 138-39, 101 S. E. 65, 68 (1919) :

> "In the business world nothing is more common than the execution of such securities in contemplation of a loan. As soon as a note is negotiated the liability to take care of it arises, and the holder's right to the security attaches."

See also *Strangi v. Wilson,* 223 Miss. 122, 77 So. 2d 697 (1955) ; *Security Acceptance Corp. v. Donegani,* 113 N.J. Eq. 281, 166 A. 209 (1933).

The general rule as stated in 59 C.J.S. *Mortgages,* § 89 at 133 (1949) is :

> "The consideration need not pass at the time of the execution of the mortgage; that may be either a prior or subsequent matter. So a mortgage made to secure promissory notes or other evidences of debt, which are intended to be negotiated or assigned and transferred by the mortgagee to third persons, is valid, although no money passes at the time of its execution; consideration subsequently furnished by the purchasers of the notes will relate back and sustain the mortgage, * * *."

When Miss Torr paid the consideration to Quick, as the agent of the Stacks, and the note and second deed of trust were delivered to her, there was good and sufficient consideration which related back to support the execution of the note and deed of trust. The distribution of the proceeds of the loan was a matter between Quick and the Stacks, but, in any event, the evidence is uncontradicted that the Stacks received $2200 from

Quick—$200 more than the amount originally agreed upon. The Stacks' defense of lack of consideration is without merit.

2.

Code (1957), Article 21, Section 30 at the time the second deed of trust was executed provided as follows:

> "(a) No mortgage or deed of trust shall be valid *except as between the parties thereto,* unless there be endorsed thereon an oath or affirmation of the mortgagee or the party secured by a deed of trust that the consideration recited in said mortgage or deed of trust is true and bona fide as therein set forth." (Emphasis supplied.)

Prior to the Act of 1963, Chapter 652, an affidavit of consideration was not required for deeds of trust but only for mortgages. For an interesting review of the cases construing this statute prior to June 1, 1963, see *Weidemeyer v. Brekke,* 248 Md. 175, 235 A. 2d 718 (1967).

The original statute requiring that an affidavit of consideration be evidenced on mortgages was the Act of 1846, Chapter 271, entitled "An Act to prevent Fraud in Mortgages and Bills of Sale." This Act provided that no deed or mortgage or bill of sale shall be valid and effective "except as against the mortgagee or mortgagors" unless the affidavit of consideration was evidenced on it. By the Act of 1856, Chapter 154, Section 112, the Act of 1846 was amended to eliminate reference to bills of sale and provided that no mortgage shall be valid "except as between the parties thereto" unless the affidavit of consideration was evidenced on the mortgage. There has been no change by the General Assembly in the exclusionary language since the Act of 1856.

Our predecessors in 1879 in *Hartsock v. Russell,* 52 Md. 619, 627 in construing an instrument stated:

> "Nor can any question arise here under the Code, Art. 24, sec. 29, requiring an affidavit of the mortgagee to the *bona fides* of the consideration for the mortgage. If the instrument involved be regarded as a mortgage, and therefore within the purview of the stat-

ute, it is perfectly good and valid as between the parties thereto, and those claiming through or under the mortgagee, without regard to the affidavit."

The Stacks advance the argument that since the General Assembly in passing the Act of 1963, Chapter 652, did not use the words "or those claiming through or under the original mortgage," this showed a legislative intent to change the judicial construction theretofore given by this Court to the statutory language—"except as between the parties thereto." The rule of construction, however, is to the contrary. It is well settled that in determining the legislative intent it will be presumed that the General Assembly is aware of previous construction of particular statutory language by this Court and if in a subsequent reenactment of the statute, the General Assembly uses the same language already construed by this Court, it intends that the same language in the reenacting legislation have the meaning we have given it. *Maryland-National Capital Park and Planning Comm'n v. Silkor Development Corp.*, 246 Md. 516, 524, 229 A. 2d 135, 140 (1967) ; *St. Joseph Hospital v. Quinn*, 241 Md. 371, 379, 216 A. 2d 732, 736 (1966).

It is clear to us that the lack of an affidavit of consideration does not impair the validity of the second deed of trust as between the Stacks and Miss Torr.

Miss Torr argues that even if the second deed of trust may be invalid as to subsequent creditors without actual notice, it would be enforceable as between the parties to it, and those claiming under the deed of trust not only because of the stated exemption in the legislation but also because, in any event, the deed of trust is an equitable lien subject to enforcement by way of foreclosure by the trustee, relying on the decisions of this Court in *Dyson v. Simmons*, 48 Md. 207 (1878) and more recently in *Pagenhardt v. Walsh*, 250 Md. 333, 243 A. 2d 494 (1968).

In view of our opinion that the deed of trust is clearly within the exclusionary language, we need not consider this contention.

### 3.

In regard to the question of usury, the Maryland law is well

established that if usury exists (we do not suggest that the present record indicates that it does exist), it is not a ground for setting aside or for enjoining a mortgage foreclosure sale. The question of usury will be passed upon by the Chancellor only at the time of the audit in the foreclosure sale if an appropriate exception is made to the audit on this ground and the usurious nature of the transaction is established by the proof.

In *Kirsner v. Sun Mortgage Co.,* 154 Md. 682, 688, 141 A. 398, 400 (1928), Judge Digges, for the Court, summarized the Maryland law and cited the prior Maryland cases as follows:

> "This court has held that the usurious character of a mortgage is no ground for setting aside a mortgage foreclosure sale, and stated that the question of usury should be determined at the time of the audit. 'The question as to usury in the mortgage can only arise upon the statement of the final account of the auditor. It cannot be urged as an objection to the ratification of the sale.' *Miller's Equity Proc.,* p. 563. The above statement of the author is supported by the decisions of this court. *Md. Perm. Land & Bldg. Soc. v. Smith,* 41 Md. 516; *Smith v. Myers,* 41 Md. 425; *Equitable Mutual Land Imp. Assn. v. Becker,* 45 Md. 632; *Buckner v. Cronhardt,* 132 Md. 612; *Boynton v. Remson,* 133 Md. 101; *Owens v. Graetzel,* 146 Md. 361."

In this regard, it may be observed that the Stacks did not admit the amount, if any, which they considered to be due and payable under the second deed of trust as of the date of filing their petition to restrain the holding of the foreclosure sale and did not pay such an admitted amount into court when the petition was filed as specifically required to be done by Maryland Rule W 76 b 2 (1) as a condition precedent for relief by way of injunction to stay any foreclosure sale.

*Order affirmed, the appellants to pay the costs.*